CAGNEY v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

1. **Master, when not liable to Servant for Injuries Inflicted by Dangerous Machinery.** A master is not liable to his servant for injuries received in the use of dangerous machinery, notwithstanding the master may have failed to provide against the danger by the use of known appliances, where the machinery is of the kind in general use, and the danger is obvious to the senses. (*Smith v. St. Louis, Kansas City & Northern Ry. Co., ante, p. 32.*)

   This principle applied to a case where the injury occurred in the use of a shaping machine, which the evidence showed was complete without a guard, and was generally so used, but could be, and was sometimes provided with a guard or fender as a security against the negligence of workmen or possible accidents.

2. **Presumption of Knowledge as between Master and Servant.** There is no presumption that a railroad company, or its superintendent of car shops, has any better means of information as to current improvements in machinery than are accessible to an experienced mechanic in the shops.

*Appeal from Jackson Special Law and Equity Court.*—HON. R. E. COWAN, Judge.

*Geo. W. Easley* for appellant.

1. Appellant's duty did not require it to adopt the guard or fender. Its duty was measured by reasonable care, which is such care as reasonably prudent men use under like circumstances. *Stack v. Patterson*, 6 Phila. (Pa.) 225; *Railroad Co. v. Elliott*, 1 Cold. (Tenn.) 612; *Railroad Co. v. Flanigan*, 77 Ill. 365. The master is not bound to change his machinery in order to apply every new inven-

tion, or pretended or even actual improvement; and a servant who consents to operate the machinery already provided, knowing its defects, assumes all the risks incident to its use.   Wood on Master & Servant, p. 693, § 332; *Wonder v. R. R. Co.*, 32 Md. 411; *Riley v. Baxendate*, 6 Hurl. & Nor. 446; *Railroad Co. v. Gildersleeve*, 33 Mich. 133; *DeGraff v. R. R. Co.*, 3 T. & C. (N. Y.) 255; Wharton on Neg., (2 Ed.) § 213; *East Tenn., &c., Ry. Co. v. Hodgens*, 2 Leg. Rep. (N. S.) 6; 15 Am. Ry. Rep. 174.

2.   The respondent having entered the service of appellant with knowledge that the machine was without guard or fender, and without any promise or inducement to lead him to believe that such guard or fender would be supplied, cannot recover, if the accident happened for want of such guard or fender.   *Hayden v. Smithville Manf. Co.*, 29 Conn. 548; *McGlynn v. Brodie*, 31 Cal. 376; *Huddleston v. Lowell Machine Shops*, 106 Mass. 282; *Combs v. New Bedford Cordage Co.*, 102 Mass. 585; *Railroad Co. v. Thomas*, 51 Miss. 637; *Sullivan v. India Manf. Co.*, 113 Mass. 398; *Kroyn v. R. R. Co.*, 32 Iowa 361; *Muldowney v. R. R. Co.*, 36 Iowa 465; *Railroad Co. v. Barber*, 5 Ohio St. 541; *Davis v. R. R. Co.*, 20 Mich. 105; *Buzzell v. Laconia Co.*, 48 Me. 113; *Owen v. R. R. Co.*, 1 Lans. 108; *Railroad Co. v. Love*, 10 Ind. 556; *Thayer v. R. R. Co.*, 22 Ind. 30; *Stone v. Oregon Manf. Co.*, 4 Oregon 52; *Frazier v. R. R. Co.*, 38 Pa. St. 111; *Perry v. Marsh*, 25 Ala. 667; *Jones v. Yeager*, 2 Dill. 67; *Gibson v. Erie Ry. Co.*, 63 N. Y. 449; *Toledo, &c., Ry. Co. v. Eddy*, 72 Ill. 138; *St. Louis, &c., Ry. Co. v. Britz*, 72 Ill. 257; *Dillon v. R. R. Co.*, 3 Dill. 324; *Ladd v. R. R. Co.*, 119 Mass. 412; Pierce's Am. R. R. Law, p. 297; 1 Add. on Torts, (Wood's Ed.) § 564; Shearman & Redf. on Neg., § 94; *Devitt v. Pacific R. R. Co.*, 50 Mo. 305; *Hulett v. R. R. Co.*, 67 Mo. 239; *Dale v. R. R. Co.*, 63 Mo. 455; *Assop v. Yates*, 2 Hurl. & Nor. 768; *Dyner v. Leach*, 26 L. J. 221; *s. c.*, 40 Eng. L. & E. 491; *Senior v. Ward*, 102 Eng. C. L. 385; *Griffiths v. Gidlow*, 3 Hurl. & Nor. 648; *Watling v. Oastler*, Law Rep. 6 Exch. 73; *Patterson v. Wallace*, 28

Eng. L. & E. 48; *Skip v. Eastern Counties R. R. Co.*, 24 Eng. L. & E. 396; *Seymore v. Maddox*, 16 Q. B. 316.

*Tichenor & Warner* for respondent.

Plaintiff entered the service of defendant not knowing the defects in the machinery used by him.   He knew there was no fender or guard, but he did not know that the absence of the same was a defect, as he did not know there was such protection for persons working with such machinery, (a stronger case than *Cayzer v. Taylor*, 10 Gray 274).   When he, a green hand and known to be such by defendant, requested of defendant to be set to work upon said machinery, he had " a right to presume on the master's compliance with the obligations implied by the contract between them," (*Dale v. St. Louis, Kansas City & Northern Ry. Co.*, 63 Mo. 459,) and that his employer would adopt suitable instruments and means with which to carry on its business.   *Gibson v. Pacific R. R. Co.*, 46 Mo. 169. Plaintiff was right in presuming that his master had exercised ordinary care and diligence in protecting him from injury, and also in selecting the agent from which it might arise.   *Buzzell v. Laconia Manf. Co.*, 48 Me. 116; *Ryan v. Fowler*, 24 N. Y. 410; *Noyes v. Smith*, 28 Vt. 64; *Patterson v. Wallace*, 18 E. C. L. 50; *Connolly v. Poillon*, 41 Barb. 369.   True the machinery was of the most dangerous kind, but true it is also the more dangerous the machine the greater the diligence called for on the part of the master. *Cayzer v. Taylor*, 10 Gray 280; *Jones v. Yeager*, 2 Dill. 67.

*Lay & Belch* and *Edwin Silver* also for respondent.

Railroads should adopt such appliances as are best adapted to secure the safety of their employees.   *Greenleaf v. R. R. Co.*, 29 Iowa 14; *Cooper v. R. R. Co.*, 44 Iowa 134; *Hegeman v. R. R. Co.*, 16 Barb. 353, affirmed in 2 Kern. 19; *Ford v. R. R. Co.*, 2 Foster & Fin. 730; *Caldwell v. Steamboat Co.*, 47 N. Y. 282; *Costello v. R. R. Co.*, 65 Barb.

92; *Smith v. R. R Co.*, 19 N. Y. 127; *Steinweg v. R. R. Co.*, 43 N. Y. 123.

NAPTON, J.—This suit was brought in February, 1876. The ground of action stated in the petition is, that the plaintiff was employed in defendant's car shops at Hannibal; that he was ordered by the foreman to get out door head circles on a shaping machine; that it was no part of his duty to do work on this shaping machine; that the defendant knowingly, carelessly and negligently furnished him with a machine and pattern both of which were imperfect and dangerous; that the machine was without a fender or guard, and the pattern was single when it ought to have been double; and, consequently, that plaintiff, while carefully and unaware of the danger, was working out door head circles, he was, through this disregard of duty on the part of defendant, wounded and bruised on his left hand to such an extent as rendered necessary the amputation of the first three fingers; to his damage $3,000.

As to the facts in this case there is no conflict in the evidence. It appears that the plaintiff had been working in the shop of defendant for six years, mostly as a sawyer on a circular saw, but by reason of the discharge of a good many workmen, he was engaged by Mr. Shed, the superintendent, to work in the shop, generally, at the wages he had been before receiving, and at his own request was allowed by Mr. Davis, the foreman, to work on this shaping machine, with the use of which he was desirous of becoming familiar. Mr. Davis gave him all the instructions he could, advised him that it was a dangerous machine and required great care, and did the most difficult jobs on it himself. The machine was without a guard; but the testimony of all the railroad officials who had superintended or worked in such shops was that they were not used any where in this State; nor was there any proof to show that they were used elsewhere, although they had been tried at Moberly, and in the shops of the Kansas Pacific, in the

State of Kansas, and been discarded or disused. In regard to the use of a single or double former, the evidence was clear that the latter was safer, when the work admitted of its use at all, as was the case on the piece the plaintiff was engaged on when hurt; but it was equally clear that the job upon which plaintiff was engaged could be safely done on a single former. The former, in this case, was handed to plaintiff by Mr. Corrigan, who was superintendent of the shop or cabinet in which such tools were made. It had been used by plaintiff on exactly such jobs as he was engaged in when he was hurt; and the job left unfinished by plaintiff in consequence of his hurt, was finished on a single former. After the accident, which disabled plaintiff for several weeks, during which his name was not stricken from the pay-roll of employees, he returned to work on the same machine, and continued to work on it eighteen months, and until a month or so before this suit was brought.

Two grounds were relied on by plaintiff for holding the defendant liable. One was that the machine upon which plaintiff was put to work was without a fender or guard. The other was that a single former was furnished him, instead of a double one.

The instructions to the jury on these points, or rather on the first point alone, were as follows: 1. "The jury are instructed that, while it is true that the defendant was not required to adopt every possible improvement in its machinery, yet it was bound to keep sufficient and safe machinery, and to adopt suitable instruments for its servants who worked upon the same, and if defendant could have provided for these by the use of ordinary care and foresight, and at a reasonable cost, then, if it failed to do so, it was guilty of a breach of duty and is liable for the consequences; and in this case if you believe from the evidence that plaintiff, while in the employ of defendant, lost the first three fingers of his left hand by means of a shaping machine furnished by defendant, and that said machine did not have a fender or guard, and that it was unsafe and

defective by reason thereof, and that defendant knew thereof, or might have known thereof by the exercise of reasonable care and diligence, and that defendant might have procured said guard or fender at small expense, then defendant is liable to plaintiff for said injury, provided you believe he received the same because of said machine not having such fender or guard; providing you believe that the plaintiff did not know at the time he was injured that there was such a thing as a fender or guard to that kind of a machine. 2. Even if the jury should believe from the evidence that the plaintiff was guilty of negligence or carelessness which contributed to the injury, yet if they further believe from the evidence that the defendant might have avoided said injury by the use of ordinary care, caution and foresight in furnishing plaintiff with safe machinery and instrumentalities upon which to perform the work on which he was engaged, and that such want of care, caution and foresight was the direct or proximate cause of said injury, then the jury will find for the plaintiff."

When the first instruction is examined, in connection with the testimony on which it was based, or ought to have been based, the objections to it are apparent. There was no testimony to show that this shaping machine was a defective one, without a guard, but that a guard was an additional security against negligence or possible accidents. These guards, it appears, had been abandoned in shops of this character where they had been tried, for the reason that some work had to be done where they could not be used, and their occasional use on such jobs as admitted their use had a tendency to make the workmen more careless, and they were, therefore, discarded as upon the whole disadvantageous. They were used at the sash and blind factory of Mr. Lovejoy, at Kansas City, and the proprietor considered them a great security on such work as he had to do; but all the witnesses who were connected with such shops as the plaintiff was employed in, agreed that they were either unknown or untried; or, if tried, had been aban-

doned. They were not used in any shop in this State, although they had been tried at Moberly; and the foreman of the Kansas Pacific railroad at Armstrong, in Kansas, testified that he had been nineteen years at the business, and that such guards were very seldom used; that he had tried them and discontinued their use, preferring to run the machine without a guard. But the instruction, disclaiming the doctrine that the defendant was bound to adopt every new invention, at the same time declares that safe machinery was necessary, which term safe is rather an equivocal one in this connection. If by this we are to understand that the machine must not be dangerous, then it is clear from all the evidence, both of plaintiff and defendant, that neither the shaping machine nor the circular saw, nor probably various other machines in this shop, complied with this requisite. The plaintiff was told that the machine on which he asked permission to work was a dangerous one, and, doubtless, considering that he had been six years at work in the same shop, knew it himself.

The instruction is also objectionable in leaving to the jury a question upon which the evidence was altogether on one side, and on which the hypothesis necessary to sustain a verdict for the plaintiff was entirely without evidence to support it. Mr. Townsend, the superintendent of the car shops at Hannibal, testified that he had been twenty-nine years in car shops, in one capacity or other, and never saw a fender to a shaping machine, until he saw the one brought into court from Lovejoy's planing mill.

The plaintiff also states in his evidence, which appears to be a candid statement of the facts, that he never saw this supposed improvement, and was not aware that a fender or guard was ever used. Why then impute to defendant, or rather to its leading superintendent in this branch of its business, opportunities of information which were inaccessible to plaintiff? For aught that appears, both Townsend and the plaintiff were unapprised of this invention, and there is nothing to show that the one had any

better opportunities of hearing of it than the other, and yet the jury were told that if the defendant knew or could have known of this supposed or assumed improvement, and the plaintiff did not know of it, the defendant was responsible for not using it.

But the leading principle involved in this first instruction is identical with the principle involved in the case of *Smith v. St. Louis, Kansas City & Northern Ry. Co., ante,* p. 32. In that case the alleged negligence was the use of a T rail instead of a U rail, as a guard rail at a switch, the U rail being proved to be the safer, though the T rail was generally used. The subject is fully discussed and the authorities reviewed in that case by Judge HENRY; and it is sufficient to refer to it as conclusive of the present.

The second instruction for plaintiff seems to have been the result of haste or inattention. If understood literally, that notwithstanding plaintiff's injury was caused by his own negligence, he was still entitled to recover, if the defendant could have prevented it by due caution in furnishing safe machinery, this instruction is emphatically contradicted by the third instruction which the court gave for the defendant, which is as follows: 3. If the jury believe from the evidence that the plaintiff, at the time he was injured, was holding his work in an improper and negligent manner, by keeping his fingers over the edge thereof on the side next to the knives of said machine, and that plaintiff's said negligence in the manner of holding said work contributed directly to the injury complained of, then the plaintiff cannot recover, and the jury will find for defendant.

This last instruction is clearly right. But it is probable the instruction was intended to assert a principle frequently recognized by this court, that where an interval occurs between the negligence of plaintiff and the injury, during which it is in the power of defendant with ordinary and proper caution to prevent the injury, it is defendant's duty to use the means afforded it of averting the damage,

and the plaintiff's negligence will not excuse the subsequent negligence of defendant which is necessarily the immediate case of the injury.    The doctrine has no application, can have none, to a cause like this, where the negligence and injury are instantaneous and simultaneous. *Nelson v. Atlantic & Pacific R. R. Co.*, 68 Mo. 593.

As to the employment of a single former, to say nothing of the uncontradicted fact that Corrigan, a fellow employee, furnished it to plaintiff, it is clear that it was competent for the work on which plaintiff used it.    It was obvious to the senses that a double former would be safer ; but that the work could be done on a single former is established by the fact that the job was finished, after plaintiff got hurt, on the same former.    No objection was made by plaintiff when Corrigan furnished him the single former, and he could see, even without the experience of six weeks on the machine, that whilst it was competent, its use required more care than a double former would, and that by putting his fingers over the side, instead of on the top, the risk of being cut was increased.    He had done similar work before ; and it was offered to be proved that he did similar work afterwards with the single former, during the eighteen months he subsequently worked on the same machine.

We refrain from any comment on the rulings of the court in regard to the admission of evidence.    There was, in our opinion, no case for a jury, and the judgment is reversed.

REVERSED.