WEAR *et al.* v. SANGER; TURNER, *Interpleader, Appellant.*

1. **Attachment:** INTERPLEA: TITLE TO PROPERTY: INSTRUCTIONS. One T. interpleaded in an attachment suit, stating in his interplea that he was the owner in his own right of the cattle levied on, and that the defendant had no right or title thereto directly or indirectly. The answer of the plaintiffs to the interplea averred that the defendant was the owner of the cattle, that he was largely indebted in St. Louis, and to keep the cattle and its proceeds from his creditors, he shipped them under cover of title in the inter-

pleader with the agreement that the latter should turn over the proceeds to him. *Held*, that the instructions properly permitted the interpleader to recover if it should be found that the defendant's wife was the owner in good faith of the cattle, and that they had been transferred to interpleader by her under an agreement by which he was to account to her for the proceeds.

2. ———— : ———— : ———— : ————. As between T. and the wife of defendant, he would not be the absolute owner. But as between him and the parties to the suit, under the facts recited in the instructions, he was the owner of the cattle, and it was not improper for him to so allege in his pleadings.

3. **Personal Property, Possession of.** While a carrier has the possession of property for the purpose of transportation the general owner may have at the same time its care and control, and in fact its actual possession.

4. **Customs of Creek Nation, Proof of:** JURY. What the custom of the Creek nation in the Indian territory is, as to the right of an Indian woman, when married to a white man, to hold in her own right what property she had before marriage, is a question of fact to be proved as any other fact, and is properly submitted to the jury for their determination.

5. ———— : WITNESS. One acquainted with the customs of the Creek nation, although not a lawyer, is competent to testify as to the same.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Noble & Orrick* for appellant.

(1) The court of appeals erred in holding that the circuit court erred in giving instructions numbered two, six and seven, asked by the interpleader, and in refusing instruction number nine asked by the plaintiffs or respondents. *Leabo v. Goode*, 67 Mo. 134; 1 R. S. of Mo., sec. 449. (2) The court of appeals erred in holding that this case falls within the rule that it is error to put to the jury issues not made by the pleadings, for in this case, if the paper issues were disregarded, both parties were equally guilty of that, as shown by the instructions asked and given at the request of both. *Ehrlich v.*

*Insurance Co.*, 88 Mo. 249. (3) · The court of appeals erred in holding that the interpleader. held the cattle upon an agreement with Mr. Sanger, made through defendant, F. M. Sanger, as his agent to sell them, after reimbursing himself in respect of his advances to Mrs. Sanger, or to the ranch, to pay the balance over to the latter. (4) Under the issues, as made by the answer and reply, plaintiffs were not entitled to recover unless they proved the cattle to be the property of F. M. Sanger.

*G. A. Madill* and *D. W. Wear* for respondents.

(1) The record presents a state of facts which demonstrates that the verdict of the jury can be accounted for on no other hypothesis than that they were misled by the instructions of the court. (2) If the instructions were correct, then the verdict of the jury should have been set aside by the trial court. And its refusal to do so was such a failure to interfere for the prevention of a palpable injustice as to demand and sanction the reversal of the judgment by the court of appeals. (3) But the respondents insist that the instructions given the jury for the plaintiffs and the interpleader are inconsistent and contradictory, and misled the jury, not only as to their powers and duty in the premises, but also as to the right of the interpleader under the evidence introduced in the cause. (4) The interpleader, by his claim made to the sheriff and his interplea filed in the cause, and in all the testimony offered by him, claimed to be the absolute owner by an unconditional purchase of the one hundred and eighty-four head of cattle seized under the attachment. This being the issue presented, the case was prepared and proofs directed to this issue. But the court, by its instructions, submitted the case to the jury, not only upon the issue of an unqualified ownership in Turner, but also upon an assumed issue or theory that if he were only entitled in his own right to a portion of the. pro-

ceeds of the cattle and as to the balance, if received by him, was to account therefor to the owner of the cattle, whoever that might be, still he was entitled to a verdict. (5) The court improperly imposed upon the jury the duty of determining the law of the Creek nation in respect of the rights of property of married women. This duty devolved on the court and should have been discharged by it. (6) The court erred in admitting, against the objection of the plaintiffs, the testimony of Sylvester W. Marston in regard to the laws of the Creek nation in respect of property rights necessary to be determined in the case. There was no claim or showing that this witness was a lawyer, or that he had ever studied the laws about which he was called to testify. And his testimony showed that he had neither learning nor knowledge on the subject. (7) The evidence showed that Sanger or his wife owed the respondent, Turner, a store account of some thirteen hundred dollars, when the cattle were shipped to St. Louis. And that from the proceeds of the cattle Turner received several hundred dollars more than the amount of this debt. That the remainder of the proceeds, twenty-six hundred dollars, was placed in the hands of the sheriff to await the issue of the attachment suit. Turner claimed in the interplea filed by him that he was the unqualified owner of this fund, because it was part of the proceeds of the sale of his property. The court instructed the jury, in effect, that if they believed Mrs. Sanger owned this fund, then Turner must recover it, although Mrs. Sanger had made no demand for it. (8) The testimony of Turner, who was on the stand as a witness in his own behalf, showed that his interest in the proceeds of the cattle was limited, in any event, to the amount of his debt against Sanger, and that this amount had been paid him weeks before he filed his interplea. But the court by its instructions ignored this fact and refused to allow Turner's right to recover to depend on his ownership of the property he

sought to withdraw from the lien of the attachment. (9) The judgment of the St. Louis court of appeals, reversing the judgment and remanding the case for a new trial, is fully supported by the facts and the rules of law applicable to the case, and should be affirmed.

BLACK, J.—The plaintiffs brought this suit by attachment, in 1881, to recover a balance due upon two notes, one made by Sanger & Colman, in 1869, and the other by Sanger, in 1872. The sheriff levied the writ upon one hundred and eighty-four head of cattle, as the property of F. M. Sanger, while in transit from Vinita, in the Indian Territory. John E. Turner filed with the sheriff a claim to the cattle, and thereupon the parties stipulated, in effect, that twenty-six hundred dollars should represent the proceeds, for the purposes of the suit, and bond was given accordingly. Turner interpleaded for the property, and upon the issues thus made, there was a verdict and judgment for him, which was reversed by the court of appeals.

The evidence shows that, prior to 1871, the defendant, F. M. Sanger, was a merchant in the Indian Territory, and purchased largely in St. Louis. He located what is called Sanger's Ranch, in the Creek nation, for the purpose of collecting cattle in payment of debts due to him from citizens of the Chickasaw nation. The Indians had suffered losses during the war, and were unable to pay him, and, in consequence, he was unable to meet his debts, due to St. Louis merchants, the plaintiffs among others. In September, 1871, Sanger had only collected one hundred and ninety-four head of cattle, and, being a white man, was required to pay a tax to the Indian government, which rendered his ranch an unprofitable affair. About this time, he sold the cattle and ranch to an Indian girl, Hannah L. Yargee, and on the next day married the girl, and thereafter the parties lived upon the ranch, and Sanger carried it on as the

agent of his wife, without the payment of the tax. The cattle in question are the increase of those sold to her, and of others given to her by her mother. Turner, the interpleader, is a merchant doing business at Muskogee, thirty-five miles from the Sanger ranch. He furnished money and supplies to Mrs. H. L. Sanger, for the ranch, so that there was due to him about twenty-three hundred dollars. The cattle in question were driven to Vinita, where Turner met them, and on the nineteenth of September, 1881, gave his due bill for the cattle to H. L. Sanger, for $5,520, less the account due to him. Some of the evidence tends to show that Turner bought the cattle at Vinita, at thirty dollars per head, and some of it tends to show that he only took the cattle to sell and account for the proceeds. They were sold in St. Louis for $2,677 in excess of the amount left with the sheriff, and the evidence tends to show that Turner has been paid his advances out of this excess.

There is a vast volume of evidence tending to show, on the one hand, that the sale of the ranch to the girl was made in good faith, and that she was the *bona fide* owner of the same, and of the cattle raised thereon ; and, on the other hand, that this sale, and the conduct of the business of the ranch by the husband for the wife, was a contrivance to hinder and delay the creditors of F. M. Sanger. These questions were all submitted to the jury, by instructions of which plaintiffs cannot complain. It is an undisputed fact that, in 1872, Sanger paid his creditors, in money and Creek warrants, some fourteen hundred dollars, of which the plaintiffs received their share, and the evidence tends to show that the money received for the ranch was a part of the money so paid to the creditors. The chief complaint grows out of the second and seventh instructions, given at the instance of the interpleader, which are as follows :

"2. If the jury finds, from the evidence, that Han-
Vol. 91—23 '

nah L. Sanger, on or about the nineteenth day of September, 1881, was the owner, in good faith, of the one hundred and eighty-four head of cattle, and that she, through her agent, F. M. Sanger, or otherwise, caused the said cattle to be delivered to John E. Turner, under an agreement that said Turner should cause the said cattle to be sold, and out of the proceeds thereof said Turner should deduct the account which he held against either her or F. M. Sanger, at his store, and pay the balance of the proceeds to her agent, F. M. Sanger, it will find a verdict for said Turner, interpleader."

"7. If the jury believe, from the evidence, that Hannah L. Sanger was, on or about the nineteenth day of September, 1881, the owner, in good faith, of one hundred and eighty-four head of cattle, and that, on or about said date, she, through her agent, or otherwise, transferred or turned over to the claimant, John E. Turner, or consented that said Turner might have and hold them as his property, or in trust for her, he to account to her for the proceeds of the cattle, they will find a verdict for said Turner, although they may find that said Turner did not pay any value or thing for the cattle."

The objection to these instructions is, that they submit an issue not raised by the pleadings. Turner, in his claim filed with the sheriff, under the local act of 1855 (R. S., vol. 2, p. 1554), which was verified, and in his interplea, states that he is the owner of the cattle, in his own right, and that the defendant, F. M. Sanger, had no right or title thereto, directly or indirectly. The answer of the plaintiffs denies these matters, and states that F. M. Sanger was the owner; that he was largely indebted in St. Louis, and, to keep the cattle and the proceeds from his creditors, he shipped them under cover of title in Turner, with the agreement that Turner should turn over the proceeds to him; all of which was put in issue by the reply. From these issues, and the previous

history of the case, it will be seen that the real question was, whether F. M. Sanger, as to his creditors, was the owner of the cattle, or had any interest therein. The cattle were attached as his property. It is true these instructions permit the interpleader to recover if it should be found that Mrs. Sanger was the owner, in good faith, of the cattle, and that they had been turned over by her to him, under an agreement by which he was to account to her for the proceeds. Thus, he is allowed to recover, though he is not the absolute owner of the property, but rather a trustee for her. Herein, it is claimed, there was a departure from the issues made by the pleadings. As between Turner and Mrs. Sanger, he would not be the absolute owner. But, as between him and the parties to this suit, under the facts stated in these instructions, he was the owner of the property, and it was not improper for him to so allege in his pleadings. A resulting interest in the property could be of no avail to plaintiffs, unless it was in favor of F. M. Sanger, and that is kept to the front by the instructions given. The instructions are correct, without reference to others, given at the request of the plaintiffs.

By the fourth instruction, given at the request of the interpleader, the jurors were told that the possession of the cattle was *prima facie* evidence of ownership, and that if Turner was in possession of them, when attached, then they would find for Turner, unless the presumption was overcome by evidence showing that Turner was not the owner. There is evidence to the effect that the cattle, when shipped, were way-billed, F. M. Sanger, shipper, John E. Turner, owner, and consigned to Scaling & Tamblyn, for account of Turner, and that he went with the cattle from Vinita to St. Louis, where they were attached, while in the cars. We do not understand it to be claimed as a general proposition that possession of personal property is not *prima facie* evidence of ownership, but the claim seems to be that there

could be no actual possession with Turner while the cattle were with the carrier. The carrier has, it is true, the possession of the property, for the purpose of carriage; but we cannot see why the owner or other person may not, at the same time, have the care, control, and, in fact, the actual possession of the property.

The jury was, also, told that the right of Hannah L. Sanger to personal property, when residing in the Creek nation, was governed by the laws and customs of that nation, and what those laws and customs were, were facts to be proved as any other fact. The contention that the court should have heard the evidence and then told the jury what the law was, cannot be sustained. It does not appear to be claimed that the right of an Indian woman, when married to a white man, to hold in her own right the property which she had before marriage, rests upon any law promulgated in the form of a statute, but it rests upon the custom of the nation. What that custom was, was a fact to be proved, as any other fact, and was properly submitted to the jury for their determination.

Nor did the court err in admitting the evidence of Marston. He states that he resided in the nation as general agent of the Union agency, and was acquainted with the customs of the Indians, as to property rights, and that by the customs the woman held and managed her property as her own, after marriage to a man who did not belong to the nation. The fact that this witness was not a lawyer was wholly immaterial. The existence of a custom, its universality, and what it was, could be proved by any one conversant with those matters.

What has been said disposes of the other alleged errors of the trial court. The case was well tried by the circuit court, and the judgment of the court of appeals is reversed, and the cause remanded to that court with directions to affirm the judgment of the circuit court. All concur.