JOHN D. WHITE, Respondent, v. THE WABASH WESTERN RAILWAY Co., Appellant.

'Kansas City Court of Appeals, February 4, 1889.

1. **Court of Appeals: CONSTITUTION : STARE DECISIS.** Where the supreme court of this state has in a long series of adjudications decided a question and settled the law thereof, this court is firmly bound by the inflexible requirement of the constitution to yield implicit obedience to that decision.

2.  **Negligence:** CONTRIBUTORY NEGLIGENCE : RULE AS TO : DEMURRER
    TO EVIDENCE : CASE ADJUDGED.  Plaintiff received an injury in a
    street much frequented by pedestrians and in the very heart of a
    populous city, at a point where it was crossed by the defendant's
    railroad track : plaintiff. at the time of the receipt of his injury was
    and had been for about five minutes standing still on said crossing
    at a point between the main track on the east and the next one to it,
    waiting for the removal of a train, which occupied said second
    track and obstructed his passage east ; and while so waiting with
    his face in the direction he was going and of the obstructing train,
    he was struck by a train behind him on the main track.  If plain-
    tiff had looked or listened, he might have been apprised of the
    approach of the train in time to have got out of the way.  If the
    employes of the defendant in charge of this train had looked they
    could have seen the plaintiff in ample time to have averted this
    disaster to him.  The train was moved over said street-crossing
    without any one of the train-men looking ahead of the moving
    train to see whether it was free.  *Held* it was not error to overrule
    a demurrer to the evidence and to submit the case to the jury on a
    proper application to the facts of the rule established in this state
    as to negligence and contributory negligence, to the effect, that if
    the negligence of the defendant, which contributed directly to
    cause the injury occurred after the danger in which the injured party
    had placed himself by his own negligence, was, or, by the exercise
    of reasonable care might have been discovered by the defendant in
    time to avert the injury, then the defendant is liable, however gross
    the negligence of the injured party may have been in placing
    himself in such position of danger.  (The Missouri cases examined
    and analyzed).

3.  **Public Highways:** RIGHTS OF RAILROADS AND TRAVELLERS
    THEREIN.  The rule stated in some cases, that the rights and duties
    of railroads and travellers upon  intersecting highways are mutual
    and reciprocal and no greater care is required of one than of the
    other, is subject to qualification in this state, and railroads with
    their dangerous and powerful machinery are to be held to a greater
    degree of care and vigilance than the traveller.

4.  **Pleading:** EVIDENCE : VARIANCE.  The petition and evidence
    examined and no sufficient variance found to disturb the judg-
    ment.

5.  ———— : PETITION : CAUSE OF ACTION.  The petition examined and
    found to state a cause of action, though inartificially drawn.

*Appeal from the Jackson Circuit Court.* —HON. TURNER
A. GILL, Judge.

AFFIRMED.

*John W. Henry, H. S. Priest*, for appellant.

(1) The petition does not state a cause of action, and the court erred in overruling defendant's objection to the introduction of any evidence by the plaintiff. *Railroad v. Stupak*, 28 A. & E. R. R. Cases, 323; *Bell v. Railroad*, 86 Mo. 211; 2 Thompson on Negligence, 1253, 1254; *Hughes v. Railroad*, 8 W. Rep. 104. (2) Specific acts of negligence were alleged in the petition as the occasion of plaintiff's injury, but the recovery was had upon other facts not pleaded. *Waldheir v. Railroad*, 71 Mo. 574; *Werner v. Railroad*, 81 Mo. 372; *Price v. Railroad*, 72 Mo. 414; *Abbott v. Railroad*, 83 Mo. 276; *Edens v. Railroad*, 72 Mo. 212; *Long v. Dixley*, 50 Ind. 385; *Buffington v. Railroad*, 64 Mo. 296; *Schneider v. Railroad*, 75 Mo. 296; *Com. v. Railroad*, 126 Mass. 472; *Railroad v. Thompson*, 62 Ala. 494; *Gillete v. Railroad*, 46 Mich. 309; *Batteman v. Railroad*, 49 Mich. 184; *McCoy v. Railroad*, 5 Del; *Railroad v. Young*, 8 Kansas, 658. (3) The court erred in overruling defendant's demurrer to the evidence. *Railroad v. Wynn*, 19 Ga. 440; *Morris v. Railroad*, 4 Zab. 268; *Mackey v. Railroad*, 27 Barb. 528; *Sheffield v. Railroad*, 21 Barb. 339; *Railroad v. Fay*, 16 Ill. 558; *Center v. Finney*, 17 Barb. 94; *Davies v. Adams*, 10 M. & W. 546; *Railroad v. Kean*, 28 Am. & Eng. R. R. Cases, 580; *Tuff v. Warman*, 5 C. B. N. S. 585; *Smith v. Smith*, 2 Pick. 621; *Thompson v. Burgewater*, 7 Pick. 188; *Rothbrecke v. Payne*, 17 Wend. 399; *Frazer v. Railroad*, 28 Am. & Eng. R. R. Cases, 570; *Stiles v. Geesey*, 71 Tenn. St. 441; *Grethen v. Railroad*, 19 Am. & Eng. R. R. Cases, 342; *Railroad v. Yneistra*, 29 Am. & Eng. R. R. Cases, 298; *Railroad v. Johnson*, 60 Ga. 667; *Crippen v. Railroad*, 40 N. Y. 34; *Railroad v. Teller*, 84 Penn. St. 226; *Railroad v. Jones*, 95 U. S. 439; *Railroad v. Beale*, 73

Penn. St. 504; *Railroad v. Bentley*, 66 Penn. St. 30; *Dascom v. Railroad*, 27 Barb. 221 ; *Wilcox v. Railroad*, 39 N. Y. 358 ; *Telfer v. Railroad*, 30 N. J. L. 188 ; *Neal v. Gilbert*, 23 Conn. 437 ; *Manly v. Railroad*, 74 N. C. 658. (4) The court erred in instructions given for plaintiff and in the one given of its own motion, and in refusing instructions asked by defendant. (See above cited authorities. )

*Hollis & Hamner*, for respondent.

( 1 ) The petition as set forth in appellant's abstract is sufficient. *Crane v. Railway*, 87 Mo. 588 ; Bliss Code Pleading, sec. 211 ; *Schneider v. Railway*, 75 Mo. 296 ; *Bell v. Railway*, 86 Mo. 599 ; *Waldhier v. Railway*, 71 Mo. 514 ; *Werner v. Railway*, 81 Mo. 372 ; *Price v. Railway*, 72 Mo. 414 ; *Edens v. Railway*, 72 Mo. 212 ; *Railway v. Jones*, 9 N. E. R. 476 ( Ind.) ; *Harman v. Schweitzer*, 13 N. E. R. 869 ( Ind.) ( 2 ) Court did right in overruling defendant's demurrer, and in giving and refusing instructions. *Donohoe v. Railroad*, 91 Mo. 357 ; *Donohoe v. Railway*, 83 Mo. 543 ; *Maher v. Railway*, 64 Mo. 267 ; *Keim v. Railway*, 90 Mo. 314 ; *O'Conner v. Railway*, 94 Mo. 150 ; *Neir v. Railway*, 13 W. Rep. 119 ; *Railroad v. Davis*, 16 Pac. Rep. 78 ; *Adams v. Railway*, 74 Mo. 553 ; *Dunkman v. Railway*, 95 Mo. 232. ( 3 ) The court should have submitted the question of contributory negligence to the jury on the facts in this case. Defendant's wrongful act was the cause of White being there, and estops it from charging contributory negligence as matter of law. *Blaiser v. Railroad*, 17 N. E. Rep. 692 ; *Thompson v. Railroad*, 17 N. E. Rep. 690 ; *Railroad v. Johns*, 14 Pac. Rep. 237 ; *Petty v. Railway*, 88 Mo. 306 ; *Moberly v. Railway*, 17 Mo. App. 542, and authorities therein cited ; *Huhn v. Railway*, 92 Mo. 440 ; *Neir v. Railway, supra ;* Beach on Con. Neg. 173, sec. 23, p. 71 ; *McGee v. Railway*, 92 Mo. 208, 215 ; *Brassell v. Railway*, 84 N. Y. 241 ;

*Railroad v. Ogier*, 35 Penn. St. 71 ; *Fowler v. Railroad*, 18 W. Va. 581 ; *Kellogg v. Railroad*, 26 Wis. 223 ; *Lesley v. Railroad*, 88 Mo. 51 ; *Railroad v. Fessell*, 31 Ind. 208 ; *Railroad v. Vanhorn*, 38 N. J. Law, 133 ; *Millman v. Railroad*, 66 N. Y. 642 ; *Brice v. W. P. & L. Co.*, 8 Ore. 60 ; *McKimbal v. Railroad*, 139 Mass. 542.

SMITH, P. J.—This was an action instituted to recover the sum of twenty thousand dollars on account of personal injuries alleged to have been received by the plaintiff at a street-crossing in the city of Moberly by being struck by a moving train on the railroad of defendant.    The petition was as follows :

Plaintiff states that the defendant is and was, at the dates hereinafter mentioned, a corporation, operating, managing, controlling and running trains of cars on a certain line of railroad, in and through the state of Missouri, from the city of St. Louis, in Missouri, to the City of Kansas, in Jackson county, and state aforesaid ; said line running by way of, and through the city of Moberly, in the county of Randolph, and state aforesaid ; said city of Moberly is incorporated under an act of the general assembly of Missouri, approved March 3, 1873 ; that within the corporate limits of the said city of Moberly, and near the business center of the same, where said railroad crosses Coates street, which is one of the main public thoroughfares in said city, defendant has constructed and maintained a great number of railroad tracks, switches, etc., said tracks being very close together and laid across said street, where trains are constantly being run and switched from one track to another ; said city of Moberly contains about ten thousand inhabitants, and is divided by railroad tracks ; the street aforesaid is the main and most traveled crossing from one side of said city to the other ; it was the duty of the defendant, and common care and caution, with

regard for the lives of persons, would dictate to any ordinarily prudent person the necessity of keeping a watchman or guard at said crossing, and a man stationed on the rear end of all switching or backing trains, and to ring the bell and sound the whistle when approaching said crossing. There was, at the dates hereinafter mentioned, an ordinance of said city of Moberly in full force, entitled :

"An ordinance in relation to the speed of cars in the city of Moberly," approved October 9, 1875, by which trains were prohibited from being run at a greater rate of speed than six miles per hour within the corporate limits ; also requiring the bell to be rung at frequent intervals while passing through the city, and particularly when within forty rods of a public street crossing, also prohibiting any trains or cars from obstructing any public crossing for more than five minutes at any one time ; that on the — day of August, 1887, whilst plaintiff was lawfully traveling along said Coates street, he was stopped by a freight train standing on the crossing at said street, and headed in a southerly direction ; that plaintiff could not pass around the said train, and was waiting for same to pull out, and whilst so waiting was, by the negligence and carelessness of the defendant, and its servants, run against and over by a train backing in a southerly direction on an adjoining track, so close to the track upon which the train was standing that there was only 56 inches between cars on said track ; plaintiff was knocked down and under the rear car and dragged 100 feet ; that his body was bruised, his legs sprained and bruised, and his right arm run over and crushed, causing immediate amputation of arm necessary, which was accordingly done, causing permanent injury to plaintiff, and causing plaintiff great bodily pain and mental anguish, and from which plaintiff has ever since suffered and will continue to suffer ; also causing plaintiff to expend large sums of

White v. The Wabash Western Ry. Co.

money for medical and surgical services, to-wit, one hundred dollars ; and by the exercise of reasonable care on the part of the defendant in the laying of its tracks in said street, or by having a watchman stationed at said crossing, or a man on the rear end of the backing train, or with bell ringing and whistle sounding, or by running at a slower rate of speed, or by not obstructing said street-crossing with said freight train, or, in short, by the exercise of reasonable care on the part of the defendant and its servants and employes the injury to the plaintiff could have been avoided ; plaintiff avers the facts to be, that the tracks aforesaid were so close together as to make it dangerous in that place, with cars operating thereon, to persons passing along said street ; that said crossing was obstructed by said train standing as aforesaid, for more than five minutes ; that there was no watchman at said crossing to guard the lives of people, or warn them of approaching trains ; that there was no one at the rear end of said backing train to signal the engineer or warn plaintiff of the danger; that said train was being run at a greater rate of speed than six miles per hour, and at a very dangerous rate under the then surrounding circumstances ; that by reason of the careless and negligent acts on the part of the defendant and its servants in the premises, as above set forth, etc.

The answer was a general denial coupled with the allegation that the plaintiff might have avoided his injuries by the exercise of ordinary care. The evidence tended to show that Moberly is a city which claims about ten thousand people ; and through which that part of appellant's road runs — which concerns this case—nearly due north and south, dividing the city territorially, in two parts. On the west is the principal business part of the city ; on the east are quite a large number of residences, though nothing like to the number on the west. Coates street is the principally traveled

thoroughfare which connects the two divisions of the city, and is laid due east and west intersecting appellant's railway at right angles. Just at and north of Coates street is the junction of that branch of defendant's railway which extends to Ottumwa, Iowa, with the line which extends to Kansas City. Both to the north and south of Coates street appellant has yards for the storage of cars, and the making up and distribution of trains; and these yards, in addition to the main line track, are connected by six other tracks which cross Coates street; and some one of these tracks is used almost constantly, either in the passage of trains or cars from one yard to the other in switching.

Between the first two of these tracks, commencing to reckon at the west, the space is eight feet, two inches; between the second and third it is eight feet, six inches; between the third and fourth it is seventeen feet and two inches; between the fourth and fifth it is thirteen feet and two inches; between the fifth and sixth (the tracks between which White was standing when struck) it is eight feet, eight inches; between the sixth and seventh it is eight feet, six inches. (Trans. Ev. Rec. p. 88).

To one approaching these tracks from either direction upon Coates street, there is nothing within one hundred feet of the right of way to obstruct the view either north or south along the tracks.

Respondent lived upon the east side and was in the habit of passing two or three times a day along Coates street over these tracks; and had been for many years perfectly conversant with the frequency of their use by trains and for switching purposes, and hence the danger of this crossing.

Plaintiff approached defendant's tracks from the west along the sidewalk on the north side of Coates street and crossed over tracks 1, 2, 3, 4, and 5, up to a freight train standing on track 6 and extending across the street, where he halted to await the pulling out of

the train. This train had, according to the evidence, been standing over the crossing five or ten minutes before respondent came up to it. When respondent came up to the train he saluted his friend Enocks, who was standing between tracks 5 and 6, and took a position by his side. Enocks was engaged in conversation with some one on the other side of the standing train, and after returning the salutation of White and observing that he took a position directly by his side, paid no further attention to him, but continued his conversation with his other friend.

. When White was struck it was daylight; and from where he was struck, he could have seen in the direction from which the cars came by which he was struck, fully half of a mile or a mile.

White said that before crossing over the tracks to the standing train he looked in both directions to see that the way was clear, but that after taking his position between tracks 5 and 6 by the side of Enocks, he neither looked nor listened for a train, although he admitted he could easily have seen or heard the one by which he was struck, but was absorbed in the conversation between Enocks and another man, and after standing about five minutes he was struck on the shoulder and knocked down, dragged sixty or one hundred feet and his right arm cut off by a train which came from the north with some coal and box-cars in front of the engine and which had, according to the evidence, been standing over the crossing five to ten minutes before the respondent came up to it.

There was evidence further tending to show that plaintiff could have seen the train as far as the train-men could have seen him; that the brakeman and fireman could have seen plaintiff from the train one hundred and fifty yards from where he was standing when injured; that when the plaintiff was struck by the train

it was stopped within a distance of seventy-five feet; that the engineer never discovered the plaintiff at all; that the train could have been stopped within two car lengths, a car being about thirty feet long; that there was a man on the second car from the engineer; that the two rear cars were coal-cars; that the plaintiff was standing at the time of his injury and for five minutes previously thereto about eighteen inches from the track and that the track he had crossed was the first one west of that on which the train was standing which arrested his passage in the street and railway crossing; that box-cars project twenty inches and coal-cars about fifteen inches respectively over the track; that the bell was rung on the train which struck plaintiff. It seems to have in effect been conceded at the trial that the train was not moved at an unauthorized speed and that the stationary train did not remain on the crossing beyond the time permitted by the city ordinances which were offered in evidence.

There was some evidence offered tending to show that the plaintiff on the day he received his injury had been "drinking."

There was other evidence offered, but it is unimportant so far as it relates to the questions we have to decide.

Defendant unsuccessfully demurred to the evidence both at the conclusion of plaintiff's case and the whole case.

The court gave at plaintiff's request the following instructions, viz:

"The court instructs the jury that notwithstanding you may believe that the plaintiff negligently placed himself in a dangerous situation, if such position was one of danger, and was negligent in not observing the approaching train, or was negligent in any other manner yet if you further believe from the evidence that the servants operating the approaching train saw plaintiff was

in a dangerous situation, or by the exercise of reasonable care on their part might have discovered his situation and that the same was dangerous, in time to have averted the injury by using ordinary diligence, then your verdict should be for the plaintiff ; and in making up your verdict as to the care and diligence to be exercised by the defendant's servants in the premises, you may take into consideration all the facts and circumstances in evidence connected with the case."

" If the jury find for the plaintiff in this case, they will assess his damages at any amount they may believe from the evidence he has sustained, not exceeding the sum of twenty thousand dollars, and in making up your verdict on the damages, you may take into consideration his mental anguish and physical suffering, and all expenses, if any, he has been subjected to by reason of the injury, and if permanent you may consider all mental or physical suffering which he is liable to suffer in the future, if any."

Of its own motion the court gave the following instructions, viz :

"Notwithstanding you may find from the evidence that the defendant's servants backed the train against plaintiff without ringing the bell or sounding the whistle, and that the train was moving at a greater rate of speed than six m iles per hour, and that the street crossing was obstructed by a train, which prevented plaintiff from passing over the tracks, that no brakeman was stationed on the rear end of the backing train, and that no watchman was at said crossing to give warning of approaching trains or other danger, yet, if you find all of the above facts and further believe from the evidence that a person of ordinary sight and hearing standing where plaintiff stood, when the train was approaching him, could, either by looking or listening, have seen or heard the train in time to keep out of its way, then the plaintiff was guilty of contributory negligence, and your

verdict should be for the defendant, unless you should believe from the evidence that the men operating the defendant's train saw the dangerous position in which plaintiff had placed himself, if plaintiff occupied a position of danger, or by the exercise of ordinary care could have seen his position of danger if he occupied such position, in time to have averted the injury by the exercise of ordinary care; and if such servants operating said train failed to exercise such care, after they discovered plaintiff's situation, or after they might have discovered his dangerous position if he occupied one of danger, by the exercise of ordinary care, and plaintiff was injured thereby, then your verdict should be for the plaintiff;'' which is a modification of an instruction asked by defendant.

"By ordinary care as required of defendant's servants in managing the train in question, is meant that degree of care which an ordinarily prudent person or persons would be expected to exercise under the same or similar circumstances."

The court refused the following instructions asked by defendant, viz :

"Notwithstanding you may find from the evidence that the defendant's servants backed the train against plaintiff without ringing the bell or sounding the whistle and that the train was moving at a greater rate of speed than six miles per hour, and that the street crossing was obstructed by a train which prevented plaintiff from passing over the tracks, and that no brakeman was stationed on the rear end of the backing train, and that no watchman was at said crossing to give warning of approaching trains or other danger, yet if you find all of the above facts, and further believe from the evidence that a person of ordinary sight and hearing standing where plaintiff stood when the train was approaching him, could, either by looking or listening, have seen

or heard the train in time to keep out of its way, then the plaintiff was guilty of contributory negligence and you should find for the defendant."

" The court instructs the jury that notwithstanding they may find from the evidence, that the defendant's servants backed the train in question against the plaintiff and that they neither rang the bell nor sounded the locomotive whistle, and that the train was moving at a greater rate of speed than six miles per hour, and that the street crossing was obstructed by a freight train which prevented plaintiff from passing over the crossing, that no brakeman or other person was standing on the rear of the backing train, and no watchman was at the crossing to give warning of approaching trains ; yet if you also find from the evidence that the plaintiff, by looking or listening, could have seen or heard the approaching train in time to get out of its way, or if not in its way, to keep out of its way, and there was nothing to prevent him from getting out of its way, if he was in its way, or keeping out of its way, if not in its way, then the plaintiff was guilty of such contributory negligence as precludes his recovery, and your verdict should be for the defendant."

The court gave for the defendant the following instructions, viz :

" You are further instructed that it is the duty of one walking along a railway, or loitering upon a rail-road-crossing, to keep a constant lookout for his own safety, and he is guilty of negligence if he does not."

" You are instructed that the law does not oblige persons operating a train to anticipate that an adult person, near the track out of danger, will place himself in danger, but they have a right to assume and run the train upon the supposition that such person will keep out of danger, if he is in a position to see or hear the train approaching."

There was a verdict and judgment for the plaintiff in the sum of *one thousand* dollars.   Within the allotted

time defendant filed motions for new trial and in arrest, which were overruled, and an appeal was therefore perfected to this court.

I.  Inverting for convenience the order in which defendant has presented this case here we shall first proceed to the examination of the ground of its complaint with respect to the instructions. It will be noticed that all the instructions given by the circuit court are entirely consistent and harmonious, but that the doctrine which they declare is in direct conflict with that of those which the defendant asked, and that the court refused.

The trial court welded into defendant's instruction number 1 as asked these qualifying words: "Unless you believe from the evidence that the men operating the defendant's train saw the dangerous position in which plaintiff had placed himself, if plaintiff occupied a position of danger, or by the exercise of ordinary care could have seen his position of danger in time to have averted the injury by the exercise of ordinary care and if such servants operating said train failed to exercise such care after they discovered plaintiff's situation or after they might have discovered his dangerous position, if he occupied one of danger, by the exercise of ordinary care, and the plaintiff was injured thereby, then your verdict should be for plaintiff," and as thus qualified gave it as an instruction by the court upon its own motion. This amendment of the defendant's instruction, barring its tautology, is unexceptionable and rendered the instruction in its entirety consistent with that given for the plaintiff numbered 1.

Doubtless defendant's instruction numbered 3 and 4 were refused for the reason they did not contain the qualification just quoted.

The underlined question which now confronts us is whether the rule which is embodied in the qualifications

which the circuit court added to defendant's said instruction is the law in this state.

We think the doctrine of this instruction as qualified by the trial court is the settled law of this state, as we shall presently endeavor to show.

Were this question *res integra* the duty would devolve upon us to examine the points and authorities urged by the defendant in support of the negative of this question. But inasmuch that the supreme court of this state has in a long series of adjudications decided the question in the affirmative, we feel firmly bound by the inflexible requirement of the constitution to yield implicit obedience to that decision.

It may be, as has been suggested by counsel, that if this is so, then the doctrine of contributory negligence has been eliminated from our jurisprudence. This contention of counsel, it is needless to say, is not well founded. An examination of the adjudicated cases elsewhere will perhaps show that the doctrine of our supreme court in respect to this rule is hardly reconcilable with that of the supreme court of the United States and of the courts of last resort in more than half of the states of the union upon the same subject. This, however, affords us no warrant of authority to depart in our rulings from that doctrine. The principle of the maxim, *stare decisis non quieta movere*, furnishes us a rule for our government in this and like cases.

If this doctrine is overturned it must be by the supreme court or the legislature, when the argument and authorities cited in support thereof by defendant's very learned and able counsel might be urged with propriety.

We will now proceed to the examination of the question as to whether the doctrine in question has the sanction of law in this state. Grouping the salient facts contained in the record and we have a case something like this: the plaintiff received an injury in a

street much frequented by pedestrians and in the very heart of a populous city at a point where it was crossed by the defendant's railroad track ; that the plaintiff at the time of the receipt of his injury was, and had been for about five minutes standing still on said crossing at a point between the main track on the east and the next one to it, waiting for the removal of a train which occupied said second track and obstructed his passage east, and while so waiting, with his face in the direction which he was going and of the obstructing train, he was struck by a train behind him on the main track. If plaintiff had looked or listened he might have been apprised of the approach of the train in time to have got out of its way.   If the employes of the defendant in charge of this train had looked they could have seen plaintiff in ample time to have averted the disaster to him, for the evidence is uncontradicted that his position near the defendant's railroad track could have been discovered by them for more than a hundred and fifty yards if they had looked, and that the train at the speed it was moving could have been stopped within about sixty feet ; that said train was moved over said street crossing without any one of the train-men looking ahead of the moving train to see whether it was free.

Upon this case we think the circuit court was justified in giving said questioned instruction.

In *Karles v. Railway*, 55 Mo. 476, which was a case where the injury was received on a street crossing, Judge NAPTON, in delivering the opinion of the court and commenting upon an instruction, said : "That mere carelessness on the part of the injured person will not excuse the defendant, if by the exercise of proper care and prudence and the rules and regulations prescribed by law the injury could have been avoided." He there quotes approvingly sec. 25, chap. 3, of Shearman and Redfield on Negligence.

*Burham v. Railway*, 56 Mo. 338, was an action for

the recovery of damages for injuries received in a collision which occurred on a street in a city. In this case Judge NAPTON delivered the opinion, and in his commentary on the instructions said : " That the jury must have found under the instructions that after defendant's agents had become aware of the dangerous situation of plaintiff's wagon it was still in the power of the managers of the train, by putting down the brakes or by reversing the engine, or by some other mode, to have prevented the collision. Of course they could not prevent an injury of this sort by any amount of care and prudence if they never saw the plaintiff's wagon, or could not by the exercise of ordinary precaution have seen it, until it was too late, and this instruction merely requires ordinary care and prudence in the prevention of the disaster originating through the imprudence of the plaintiff in driving his wagon on the track at such time when he knew a train was expected ; and the question of the knowledge of the conductors of the train, or of their opportunities of knowledge of the plaintiff's situation necessarily entered into the question of prudence and care, or of their opposites, of negligence, recklessness and want of care."

In *Harlan v. Railway* there were delivered two opinions, one by Judge NAPTON, and the other by Judge HENRY on a motion for rehearing, which opinions are respectively reported in 64 Mo. 480 and 65 Mo. 22. The facts in that case do not differ very materially from those in this case. Harlan stepped from behind some cars standing on the side-track, which was seven feet from the main track, and was killed by the engine almost immediately. His hearing and sight were ordinarily good. The moving train which struck him could have been heard from one hundred to two hundred yards. The engineer did not see him before he was struck and there was no possibility of stopping the engine had the engineer seen him before he was struck,

so as to avoid the disaster. Upon these facts Judge NAPTON in his opinion said "that the failure of Harlan to exercise proper vigilance in crossing the railroad track at the time he was injured was negligence *per se.* Of course no amount of negligence on the part of a stranger would authorize a railroad engineer to run over him if there was a possibility of avoiding it. But it is proved in this case by the plaintiff's own witness that the engineer did not see him until he was killed, and if he had seen him there was no possibility of stopping the engine in time to have avoided the injury." Judgment was reversed and later there was a motion for a rehearing, in the disposition of which Judge HENRY said: "But if after discovering the danger in which the party had placed himself, even by his own negligence, the company could have avoided the injury by the exercise of a reasonable care, the exercise of that care becomes a duty for the neglect of which the company is liable."

When it is said in cases where plaintiff has been guilty of contributory negligence that the company is liable, if by the exercise of ordinary care it could have prevented the accident, it is to be understood that it will be liable if by the exercise of reasonable care after a discovery by defendant of the danger in which the injured party stood the accident could have been prevented, *or if the company failed to discover the danger through the recklessness or carelessness of its employes when the exercise of ordinary care would have discovered the danger and averted the calamity.*

This doctrine finds a similar recognition in *Cagny v. Railway*, 69 Mo. 423, and in *Price v. Railway*, 72 Mo. 414. *Zimmerman v. Railway*, 71 Mo. 484, was an action to recover for an injury received in a street over which the railroad ran. Judge HENRY delivered the opinion of the court and said: "When there is negligence on both sides and sufficient time elapses between

the negligence of defendant and that of plaintiff which has exposed the latter to danger, for defendant to discover the danger to which plaintiff is exposed and avoid injuring him, and there is evidence on this point, the qualification of the instruction should be made." *Kelly v. Railway*, 75 Mo. 138, was where the injured person came upon the track of a railroad where it crosses a street in a city and was there struck by a locomotive. The proof was, that the deceased, if he had looked, could have seen the locomotive approaching.

In the opinion of the court, delivered by Judge HENRY, it is said : "If the engineer and fireman had been at their places and keeping such lookout as was their duty in running through a populous city and approaching a public crossing of one of its thoroughfares, the evidence tends to show that they would have seen plaintiff as he stepped upon the track, and stopped the locomotive." It is further said in the case by the same learned judge, "that if the negligence of the company which contributed directly to the cause of the injury accrued after the party injured was, or by the exercise of proper care, might have been discovered on the track by defendant's servants in charge of the train in time to stop and avert the calamity, the railroad is liable, however gross the negligence of the injured party may have been in placing himself in a dangerous situation."

In *Werner v. Railway*, 81 Mo. 368, the doctrine of the foregoing cases is emphasized by the court. Judge HENRY delivered the opinion. And in *Donohoe v. Railway*, 83 Mo. 543, which was a case where the injury was not received in a public crossing in a populous city, yet he applied to those facts the doctrine of the *Harlan case*, *supra*, and the other cases just cited. *Bell v. Railroad*, reported in 72 Mo. 50, and 86 Mo. 599, was a case upon its facts where the supreme court had presented to it the whole doctrine of contributory negligence in a

very elaborate argument supported by a brief seemingly exhaustive of the subject, and yet the case was disposed of without any discussion whatever of the principles involved, the court evidently regarding the questions as there presented as already settled. *Rine v. Railway*, 88 Mo. 392, is a case where the injury, for which the action was brought, was received at a place on the track on the railroad where the injured person was a trespasser thereon. Judge BLACK delivering the opinion of the court, in his comments upon this instruction: "Defendant is liable in this case only if its servants failed to exercise ordinary care to prevent the injury after they became aware of the danger to which deceased was exposed *or after they might have become aware thereof by the exercise of ordinary care*, and by ordinary care is meant such care as would ordinarily be used by prudent persons performing like service under similar circumstances," said: "The court modified this instruction by inserting the italicised words * * * According to the authorities before cited, the instruction should have been given as asked," that is, without the italicised words. "There is no analogy between the case at bar as respects the question under consideration and those cases where the servants failed to observe some municipal or statutory regulation, and the injury is attributed to that in whole or in part, or where they are not found at their proper places when passing a public crossing, or going through a populous city or district, or fail to heed due warning, etc. Such a qualification as the one in question will be proper in some cases, but it cannot and ought not to be upheld in this case."

In *Donohoe v. Railway*, 91 Mo. 356—a case in many respects analogous to the case in hand in its facts,—it was held, Judge NORTON delivering the opinion, that this instruction was correct: "That in approaching the crossing it was the duty of Donohoe to stop, look and listen for a train, and if he failed to do so he was guilty

of such negligence that the plaintiff could not recover, unless the jury further find that the defendant's agents in charge of the train either saw, or by the exercise of ordinary care could have seen the peril that Donohoe was in, in time to have avoided injuring him." Judge NORTON goes further and repeats approvingly the remark made by the judge who delivered the opinion in *Werner v. Railway, supra,* to the effect that, " Counsel indulges in a criticism of the cases in which this court has held that if the negligence of a defendant which contributed directly to cause the injury occurred after the danger in which the injured party had placed himself by his own negligence, was, or, by the exercise of reasonable care might have been discovered by the defendant in time to have averted the injury, then the defendant is liable, however gross the negligence of the injured party may have been in placing himself in such a position of danger. Such is the established doctrine of this court." *Yancy v. Railway,* 93 Mo. 432, does not assert a doctrine in this respect different from the case last cited. *Dunkman v. Railway,* 95 Mo. 232, reasserts and reaffirms the opinion of Judge BLACK in the case of *Rine v. Railway, supra,* and need not be further noticed here.

The rule contained in the qualification engrafted by the circuit court on the defendant's instruction has been indiscriminately applied as well to cases where the original party was a trespasser as to those where he was rightfully on a street-crossing in a populous city, by reason of which some confusion has arisen ; but in the *Rine* and *Donohoe* cases just mentioned, the proper distinction has been drawn, so that there need be no longer any difficulty in correctly applying this doctrine. The evidence in this case clearly shows that the plaintiff, at the time of the receipt of his injuries, was rightfully upon a street-crossing in a populous city, and that between the time which he assumed his position therein

which was one of peril, and the time he was struck by the defendant's moving train, there was ample time for the employes of the defendant in charge of such train, after they might have become aware thereof by the exercise of ordinary care, to have averted the disaster.

In some of the adjudged cases the law is stated to be that the rights and duties of railroads and travelers upon intersecting highways are mutual and reciprocal, and that no greater degree of care is required of one than of the other. But in this state the rule is subject to qualification as the decisions of its highest court which we have cited plainly show. We take it that railway corporations invested with the power of eminent domain and using and employing dangerous machinery propelled by steam, and other powerful motors over and along the streets of a populous city, are to be held to a greater degree of care and vigilance than the traveler thereon, and this rule it seems to us is grounded upon considerations of a sound public policy. We think this very case aptly illustrates the wisdom of this rule.

II.  Upon the grounds stated in the foregoing paragraph it must needs follow that the circuit court did not err in overruling defendant's demurrer to the evidence.

III.  We do not think there is that variance or want of correspondence between the cause of action alleged and the proof that would authorize us to disturb the judgment on that account. This case is distinguishable from *Waldhier v. Railway*, 71 Mo. 514, and other cases of which it is a type. The petition sufficiently stated a case of actionable negligence, and there was evidence tending to support the same upon which the jury under the instructions found for the plaintiff.

IV.  If the inartificially drawn petition of plaintiff in this case is stripped of the useless words and redundant matter with which it is encumbered, there will still remain a sufficient statement of a cause of action. It states in its inimitable way that while plaintiff

was waiting on a public street, where the same is crossed by the defendant's railroad, for the defendant to move away one its freight trains which was then standing, and which obstructed plaintiff's passage along said street, that defendant, by its servants, backed another one of its trains in a negligent manner against him and thereby injured him, and which injury might have been avoided by the defendant's servants in running said train had they exercised ordinary care in respect thereto.

We think that the petition in substance stated a good cause of action under the rulings of the supreme court in *Werner v. Railway*, 81 Mo. 368 ; *Crum v. Railway*, 87 Mo. 538 ; *Edens v. Railway*, 72 Mo. 212.

It follows from what has been said, Judge ELLISON concurring, Judge GILL not sitting, that the judgment of the circuit court is affirmed.