LENA WARMINGTON, Respondent, v. THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, June 8, 1891.

1. **Railroads**: NEGLIGENCE: CONTRIBUTORY NEGLIGENCE: EVIDENCE. The evidence in this case is reviewed and the case is *held* by SMITH, P. J., to fall within the rule that, after discovering the danger in which the plaintiff had placed himself, even by his own negligence, if the defendant could have avoided the injury by the exercise of reasonable care, the exercise of that care becomes a duty, for the neglect of which the defendant is liable. [ELLISON and GILL, JJ., *dissenting*, the former in a separate opinion.]

2. **Master and Servant**: NEGLIGENCE OF FELLOW-SERVANTS. The master is not responsible to those engaged in his employment for injuries suffered by them as the result of the negligence, carelessness or misconduct of. other servants in his employ engaged in the same common service, unless the master himself had been in fault; and a brakeman in a switch gang is a fellow-servant with the engineer in charge of the switch engine.

3. ——— : ——— : KNOWLEDGE OF CO-SERVANTS. If a servant discovers that a fellow-servant is careless or incompetent and continues. in the employment of his master without protest or complaint, he is deemed to assume the risks of such danger and to waive any claim upon his master for damages in case of injury; and so a brakeman in a switch gang, who knows of the carelessness and incompetency of the engineer in charge of the switch engine, cannot recover for injuries inflicted through the carelessness of the latter.

4. **Trial Practice**: CONTRIBUTORY NEGLIGENCE : PLEADING : DIRECTION OF THE COURT. When the inference of contributory negligence arises from the plaintiff's own testimony, the defendant may take advantage of it regardless of whether such special defense be pleaded or not; and when such contributory negligence is shown as defeats plaintiff's right of action and disproves his case, it is the duty of the court to declare the result to the jury as a matter of law.

*Appeal from the Jackson Circuit Court.*--Hon. J. H. SLOVER, Judge.

REVERSED.

*Gardiner Lathrop* and *Samuel W. Moore*, for appellant.

(1) The act of voluntarily attempting to board a moving car, going at the rate of six or eight miles per hour, standing on the track between the rails, and attempting to catch the brakerod with the hand and the brakebeam with the foot, as the car comes up, is an act of gross negligence and rashness, such as will prevent a person from recovering from any injury received while engaged in such an attempt. *Gibbons v. Railroad*, 23 N. W. Rep. 644; *Cunningham v. Railroad*, 12 Am. & Eng. R. R. Cases, 217; *Railroad v.*

*Estes*, 37 Kan.; *Murray v. Railroad*, 38 Am. & Eng. R. R. Cases, 177 ; *Sparks v. Railroad*, 31 Mo. App. 111 ; *Jackson v. Railroad*, 14 S. W. Rep. 54 ; *Yarnall v. Railroad*, 75 Mo. 575 ; *Powell v. Railroad*, 76 Mo. 80 ; *Loeffler v. Railroad*, 96 Mo. 267 ; *Bolt & Iron Co. Case*, 12 Ill. App. 369 ; *Railroad v. Simmons*, 11 Bradwell ; *Seita v. Railroad*, 82 Mo. 439 ; *Dowell v. Railroad*, 61 Miss. 519 ; *O'Neill v. Railroad*, 45 Iowa, 546 ; *Aleend v. Railroad*, 111 Ill. 202 ; *Bunt v. Mining Co.*, 24 Fed. Rep. 847 ; *Railroad v. Stentmeyer*, 92 Penn. St. 276; *Sears v. Railroad*, 53 Ga.; *Kresanowski v. Railroad*, 18 Fed. Rep. 229. ( 2 ) Where the evidence offered by plaintiff raises a necessary inference of contributory negligence, the plaintiff cannot recover, although there may be some evidence of negligence on the part of the defendant. *Sparks v. Railroad*, 31 Mo. App. 115 ; *Powell v. Railroad*, 76 Mo. 83; *Taylor v. Railroad*, 86 Mo. 463. ( 3 ) But, even if Madden was negligent in running the train, still there can be no recovery. His unfitness and want of care in the performance of his duties as engineer were not unknown to Warmington. On the contrary they were notorious. Specific acts of negligent conduct on Madden's part had occurred since Warmington became a switchman, and his character and habits had been talked over in Warmington's own crew. With such knowledge of Madden's incompetency, Warmington remained in defendant's employ without complaint and without promise of a change. He thereby assumed all the risks of Madden's negligence, and the plaintiff cannot recover on account thereof. McKinney on Fellow-Servants, sec. 88, p. 199 ; *McDermott v. Railroad*, 87 Mo. 285 ; *Harris v. Railroad*, 40 Mo. App. 255; *Davis v. Railroad*, 20 Mich. 105.

*Gates & Wallace*, for the respondent.

( 1 ) But, even if Warmington had stood between the rails of the track expecting to board a moving car,

this could not be said to be negligence as a matter of law, under the evidence that this was the usual and customary way among switchmen, and that it was as safe or safer than standing on the side of the track. This testimony was admissible as being evidence of what an ordinarily prudent man would do under like circumstances. *Maxwell v. Eason*, 1 Stewart (Ala.) 514; 32 Minn. 133; *Stephens v. Tuckerman*, 33 N. J. L. 543; *Maury v. Tallmadge*, 2 McClean, 157; *Railroad v. Cowsed*, 57 Tex. 293; *Huhn v. Railroad*, 92 Mo. 440; Clarke's Brown on Usage & Customs, p. 245, note; *Jeffrey v. Railroad*, 56 Iowa, 546; *Coates v. Railroad*, 62 Iowa, 486; Black on Pleadings & Proof in Accident Cases, p. 44; *Barry v. Railroad*, 98 Mo. 62. (2) The question presented is, whether there is any evidence to sustain the verdict. If there is any at all in this case the verdict is not to be disturbed. (3) There is nothing in appellant's point that the reply "admits that the said Wm. R. Warmington was standing between the rails of defendant's track, and that he attempted to get onto the brakebeam of a moving car." The reply expressly denies that he was negligent in so standing, or in so attempting to get on the car.

SMITH, P. J.—This was an action by the plaintiff against the defendant to recover damages for injuries received by plaintiff's husband while in the service of defendant in the capacity of switchman, from which he died. The petition in substance charged that the injury complained of was caused by the negligence and unskilfulness of Madden, engineer, in charge of a switch engine of defendant, while running the same, and that such negligence and unskilfulness was known to defendant and unknown to deceased. The plaintiff had judgment, and defendant appealed. The defendant assails the judgment on the specific ground that the trial court erred in refusing to instruct the jury, that

under the pleadings and the evidence the verdict should have been for it. The question thus presented must be solved in the light of the evidence.

I. It appears from the record before us that Warmington, the deceased, was one of a crew of five men in the defendant's employment, which consisted of a foreman, engineer, Daniel Madden, a fireman and two brakemen, of the latter Warmington was one. Defendant's switch engine, 219, to which Warmington's crew belonged, was engaged at the time of the injury complained of at work in the defendant's yard in Kansas City under the orders of the yardmaster. On November 30, 1887, the yardmaster ordered the foreman of the crew to get a Gondola car, loaded with lumber, on track 22, and take it to the Hannibal yards. It is rather difficult without the aid of a plat of the defendant's yard, with which we have not been favored, to make clear the relations of the defendant's main tracks to its sidetracks and the several branches of the latter, so that the statement of the movements of the engine on the several tracks just preceding the injury can be fully understood. It may be stated, however, in a general way, that the defendant operates two main lines of its road through its yard, running north and south, which are termed main tracks number 1 and number 2. Diverging from these lines are numerous side lines, one of which, number 6, has a branch which is numbered 22. South of the yard, on main track number 2, is a water tank. Side line number 6 diverges from both main tracks north of the water tank. The point of divergence from main track number 2 is about one hundred and fifty yards north of the water tank. Branch line number 22 diverges from side line number 6 at a point about three hundred yards from where the latter joins the main line number 2. In executing the order of the yardmaster in respect to the movement of the car of lumber, the engine moved along on sidetrack number 6 until it reached the point where side line number 22 is

joined to it, where it stopped and Warmington got off, threw the switch and let it into the branch, on which it ran until it reached the car which was immediately coupled onto the tender by some of the crew other than Warmington, who had remained at the switch. When the car backed out of the switch on sidetrack number 6, Warmington got aboard of it and rode south until the office of the yardmaster was reached, where he got off. This office is located on number 6 near its intersection with main line number 2. The engine with the car attached moved down on number 2 to the water tank, where it remained about five minutes. It was then after six o'clock in the evening, and dark. At this time Warmington came upon side line number 6, and took his stand at a point distant about the length of the locomotive tender and car, from where number 6 joins main line number 2. Standing there in the middle of the track with his lantern, he signaled the engineer at the water tank to back up. The order of the yardmaster was to back up on the main line to where number 6 diverges, *enter it, then run south on it to main line number 1*, and from thence north on it to the Hannibal yards. The engineer responded to the signal by backing up. There was nothing to obstruct his view. His face was turned that way. He had to stop as soon as he got onto number 6, long enough for the switch to be closed, and to reverse his engine, before he could run south. Warmington was standing with his lantern at a point on number 6 about where the north end of the car should have come to a stop. The engine backed the car up at a rate of speed of about eight miles an hour. Instead of stopping just inside of the switch it went four or five carlengths upon number 6, and two or two and a half carlengths beyond where Warmington was standing when injured.

Warmington could have seen the car all the way as it approached from the water tank to where he stood, while on the other hand the engineer could have seen

Warmington from the time he left the water tank until almost to the very moment he was struck  From the fact that Warmington took his stand in the middle of the track of number 6 at a distance from the switch entrance, equal to about the length of the engine, tender and car, together with the further fact that he knew the engine had to stop as soon as it entered the switch preparatory to moving south on that track, I think the inference is quite plain that he had not contemplated jumping on the car which killed him while it was in motion, but that he expected to get on after it had come to a stop there.  If the train had been going further north on number 6, and had not been obliged to stop at that point, then the presence of Warmington at the place where he stood when injured would have raised the inference that he intended to board the passing car.  The testimony shows that a man cannot get on the brakebeam of a moving car under favorable conditions when the speed exceeds four miles an hour, and this we should think the engineer was presumed to know.  He moved his train at double that rate of speed. The testimony was that even at that rate of speed he could have stopped the engine within four or five feet of the switch entrance.  The tendency of all the evidence is to show that Madden, the engineer, was a careless, incompetent and unfit person to act as the engineer of the engine in question at the time Warmington met his death.

But, suppose Warmington did take his position in the middle of the defendant's sidetrack, number 6, upon the erroneous assumption that the train would be stopped as soon as it cleared the switch entrance, and that the end of the car would not come further than where he stood, still, was he not guilty of negligence, which contributed to his injury and death?  I think it must be conceded that, by that act, he was guilty of contributory negligence ; but,  even though he was, ought it to preclude a recovery under the facts of the

case? Was not the defendant guilty of negligence in running the train. The engineer must have known that Warmington was relying upon the stopping of the train when it passed the switch. He knew, too, that if Warmington intended to jump upon the brakebeam as the car passed, that he could not do so at the rate of speed the train was going. From his position on the engine, he was bound to have seen, and to have become aware of, the peril of Warmington's situation. I think the evidence abundantly shows that the engineer saw, or could have discovered, by the exercise of ordinary care, the danger in which Warmington was, in time to have averted the disaster. This case falls, as I think, within that rule now firmly imbedded in our jurisprudence, which is to the effect that, in cases where plaintiff has been guilty of contributory negligence, the defendant is liable; if, by the exercise of ordinary care, it could have prevented the injury. It is to be understood that the defendant will be liable, if by the exercise of reasonable care, after a discovery by defendant of the danger in which the injured party stood, the injury could have been prevented, or if the defendant failed to discover the danger, through the recklessness of the employes, when the exercise of ordinary care would have discovered the danger, and averted the calamity. Or to state the same rule in another way, that, if, after discovering the danger in which the plaintiff had placed himself, even by his own negligence, the defendant could have avoided the injury by the exercise of reasonable care, the exercise of that care becomes a duty, for the neglect of which the defendant is liable. *White v. Railroad*, 34 Mo. App. 57; *Cogney v. Railroad*, 69 Mo. 423; *Price v. Railroad*, 72 Mo. 414; *Zimmerman v. Railroad*, 71 Mo. 484; *Kelley v. Railroad*, 75 Mo. 138; *Rine v. Railroad*, 88 Mo. 372; *Warner v. Railroad*, 81 Mo. 368; *Donohoe v. Railroad*, 83 Mo. 543; *Yancy v. Railroad*, 93 Mo. 432; *Donohoe v. Railroad*, 356;

*Dunkman v. Railroad*, 95 Mo. 232.   The remark of the eminent judge who delivered the opinion in *Kelley v. Railroad, supra*, "that if the negligence of the company which contributed directly to the cause of the injury occurred after the party injured was, or by the exercise of proper care might have been, discovered on the track by defendant's servants in charge of the train in time to stop and avert the calamity, the railroad is liable, however gross the negligence of the injured party may have been in placing himself in a dangerous position," is applicable here.

In operating a railway train in the absence of any municipal regulation to the contrary, no rate of speed is, of itself, negligence, yet, cases may, and do, arise, where it is necessary to determine whether the act of the railway company complained of is negligent, to take into consideration the rate of speed of the train at that time, together with other facts.   *Stepp v. Railroad*, 85 Mo. 229.   When a train is run at an unusual rate of speed, it is the duty of those in charge of it to use greater vigilance and care, so as to prevent accidents on the track.   Hence, the speed of the train in question becomes a material fact in the determination of the question of defendant's negligence.   Knowing, as the engineer presumably did, that, at the rate of speed he was running the train, Warmington could not get on the car while it was in motion, if it was his purpose to do so, with safety, it was the duty of the engineer either to have reduced the speed so that he could, or to have stopped the train if it could be done, as soon as within the switch, and before or by the time it reached the place where Warmington was standing. If the engineer had used either of these precautions after becoming aware of the dangerous situation Warmington was in, as it appears he could, no injury would have happened.   He knew the rate of speed he was going—but Warmington did not.   He knew that Warmington was on the track and at a place of danger, yet he

ran his train, after he knew this fact, or might have known it, had he looked in the direction duty required him, "at a rapid jog," much beyond the point, where it was probably his duty to have stopped. His order was to back through the switch onto track number 6, and then run south to the main track. It was wholly unnecessary to have passed the switch even at the rate he was going more than four or five feet, before he could have stopped. His duty was to do this, and then run the other way. Every foot he ran north on this track beyond what was necessary to clear the switch was in disregard of his order. If he had obeyed orders and exercised usual care and skill in operating the engine, the train would not have extended to beyond where Warmington stood, nor would it have run even at such rate of speed by that place and over him. The whole of the engineer's performance was characterized by the most wanton recklessness and flagrant disregard of duty. The conclusion must be that Warmington was guilty of negligence, but that the defendant was likewise guilty of negligence, and that the defendant's engineer either did or could have discovered, by the exercise of ordinary care, the danger in which he was in time to have prevented it, and, so, I would feel bound to hold defendant liable for the injury, were it not for another aspect of the case to which I shall presently advert.

II.     The defendant claims exemption from liability to the plaintiff on another and further ground of contributory negligence of the deceased. It contends that though the evidence indubitably establishes the fact that Madden habitually performed the duties of his employment in an incompetent, negligent and reckless manner, and that the reasonable inference to be drawn therefrom is that the defendant knew, or ought to have known, this, and yet, with the knowledge, it continued him in its employment, still that the further inference is equally clear that the deceased knew, or ought to have known, of Madden's incompetency, negligent and

reckless habits, while discharging the duties of his employment, and, notwithstanding such knowledge, he continued in the employment of defendant without protest or complaint, and so waived any claim upon defendant for damages for the injury he received in consequence of the negligent conduct of Madden.

I am inclined to think that in the opinion expressed after the first hearing of the case, that I did not give this question that full consideration, which subsequent reflection has convinced my mind that it justly deserved.   I shall now endeavor to re-examine it in the light of the law and the evidence in the record before us.   It is the common-law rule in every state and territory of the Union, and in the federal courts, that a master or employer is not responsible to those engaged in his employment for injuries suffered by them as the result of the negligence, carelessness or misconduct of other servants in his employ engaged in the same common or general service or employment, denominated fellow-servants, or coemployes, unless the employer himself has been in fault.   Beach on Cont. Neg., sec. 102. And this rule was long ago established in this state. *Gibson v. Railroad*, 46 Mo. 163 ; *Gormly v. Iron Works*, 61 Mo. 492 ; *McDermott v. Railroad*, 30 Mo. 115 ; *Cumings v. Collins*, 61 Mo. 520 ; *Smith v. Railroad*, 69 Mo. 32 ; *Current v. Railroad*, 86 Mo. 62 ; *Moran v. Brown*, 27 Mo. App. 487.

The principle is that a servant when he engages to serve a master undertakes as between himself and his master to run all the ordinary risks of the service, and this includes the risk of negligence on the part of a fellow-servant whenever he is acting in the discharge of his duty as a servant of him who is common master of both.   The responsibility of a master to each of his servants for the competency and fitness of the other servants he employs is analogous to the duty he owes them in regard to machinery.   He must take ordinary care and

reasonable precautions not to employ reckless, dissipated or incompetent servants for positions where their fault may injure their fellow-servants, and if he fail to do this he is liable in case of such injury. If a servant discovers that a fellow-servant is careless or incompetent and continues in the employment of his master without protest or complaint he is deemed to assume the risks of such danger, and to waive any claim upon his master for damages in case of injury. Beach on Cont. Neg., sec. 140 ; Woods on Master & Servant, sec. 422 ; *Devitt v. Railroad*, 50 Mo. 302 ; *Dale v. Railroad*, 63 Mo. 455 ; *Devlin v. Railroad*, 67 Mo. 545 ; *Current v. Railroad*, 86 Mo. 63. It is obviously plain from the facts appearing in the preceding statement that the relation which the deceased bore to Madden at the time of the injury was that of co-servant in defendant's employment within the meaning of the rule. Beach on Cont. Neg., sec. 112 ; *St. Louis Ry. Co. v. Britz*, 72 Ill. 256 ; *Summerhays v. Railroad*, 2 Col. 284 ; *Corbett v. Railroad*, 26 Mo. App. 621 ; *Murray v. Railroad*, 98 Mo. 573.

Turning to the evidence of the plaintiff, and it will be seen that the reputation of Madden for incompetency, carelessness and recklessness was generally known and talked of among deceased's co-servants. The evidence of this fact was all one way, and conclusively establishes it. Unquestionably the inference is that the defendant knew, or ought to have known, this fact and yet continued him in its employment. On the other hand, the deceased must have known this fact, too; for the evidence discloses that it was a matter of common knowledge, or general discussion, among his co-switchmen and the other trainmen of the defendant. There is no evidence that deceased ever made protest or complaint to the defendant of this fact. The burden of showing that he made such complaint to defendant was on the plaintiff, and in the absence of such showing we

must presume there was no such complaint made. It results from this that the inference of contributory negligence arises from the plaintiff's own testimony. It is well settled when this is so the defendant may take advantage of it, regardless of whether such special defense be pleaded or not. *Milburn v. Railroad*, 86 Mo. 104; *Schlereth v. Railroad*, 96 Mo. 509. And, when such contributory negligence is shown as defeats plaintiff's right of action and disproves his case, it is the duty of the court to declare the result to the jury as a matter of law. *Hudson v. Railroad*, 101 Mo. 13; Rorer on Railroads, 1054, 1055. It must follow from these observations that the plaintiff is not entitled to recover, and that the judgment of the circuit court should be reversed.

My associates do not concur in what is said in the first paragraph of this opinion, but do concur in the second and last. Judge ELLISON expresses his views in a separate opinion.

We all agree that the judgment should be reversed which is so ordered.

### SEPARATE OPINION.

ELLISON, J.—This action is for the death of an employe, and the record clearly shows that the deceased attempted to get upon a moving train by placing himself in the middle of the track and jumping on the end. The pleadings show this, and in order to justify such conduct there was an attempt to show such to be the custom of switchmen. We thus have a case where the deceased deliberately stood in the middle of the track with the intention of taking his chances in jumping or climbing upon the end of a moving train, a misstep or miscalculation meaning certain death. But it is said that the engineer, seeing him upon the track, by making a short stop, could have prevented the accident.

This will not do, for, as said before, plaintiff's pleadings show that deceased was not wanting the train to stop, as it was his habit to get on while it was moving. It was also further suggested that the train was going faster than usual and ran further onto the switch than it should. To this the answer is that it is evident that no sane man could expect that a train would every time be stopped at exactly the same place, and in this connection it was conceded by counsel that deceased was standing a few feet within the line of where it sometimes did stop. A full examination of this case demonstrates to my mind that no recovery can be justified by any principle of law.