FLORIAN IRMER, Respondent, v. ST. LOUIS BRÉWING COMPANY, Appellant.

### Kansas City Court of Appeals, February 1, 1897.

1. **Master and Servant**: PLACE OF WORKING: NEGLIGENCE: EVIDENCE. The law enjoins upon the master the duty to furnish the servant a reasonably safe place to work; and a failure to comply with this legal duty might under circumstances authorize the legal inference of negligence, but it devolves upon the servant to prove the failure of the master. A trapdoor over which a servant, in the performance of his duty, must necessarily pass should be suitably guarded and lighted to protect the servant.

2. ———: ASSUMPTION OF RISK: OBVIOUS DANGER: CONTRIBUTORY NEGLIGENCE. When a servant knows of a trapdoor situated where it was so dark that its location could not be discovered and undertakes to pass it, he would assume the risk of the danger incident, since it is perfectly obvious; and in this case the evidence is sufficient to send to the jury the negligence of the master and the contributory negligence of the servant.

3. ———: NEGLIGENCE: FELLOW SERVANT: DEFENSE. Where the injury of the servant results from the combined negligence of the master and a fellow servant, the negligence of the fellow servant constitutes no defense.

4. ———: LOCATION OF DOOR: INSTRUCTION. An instruction submitting to the jury the question of whether the master was negligent in maintaining a trapdoor on a certain passageway is approved on the evidence in this case.

5. **Appellate Practice**: DISTURBING VERDICT: PARTIALITY: TRIAL COURT. The appellate court will not disturb a verdict except for corruption or misdirection, and the trial court is the proper tribunal to correct an appearance of partial or prejudicial misconduct of a jury.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

VOL. 69 app—2

*Charles W. Chase* and *Frederick J. Chase* for appellant.

(1) In an action for personal injuries caused by negligence, a demurrer to the evidence should be sustained when the evidence does not disclose any negligence on the part of defendant. *Smith v. R'y*, 113 Mo. 70; *Hyde v. R'y*, 110 Mo. 272; *Berning v. Medart*, 56 Mo. App. 443; *Wright v. Cooper*, 127 Mo. 377; *Kennedy v. R'y*, 43 Mo. App. 1. (2) Plaintiff may be guilty of such contributory negligence that the court should instruct the jury that as a matter of law plaintiff can not recover. *Gleason v. Manufacturing Co.*, 94 Mo. 201; *Hicks v. R'y*, 46 Mo. App. 304; *Webber v. R'y*, 100 Mo. 194; *Kelsey v. R'y*, 129 Mo. 362. (3) A servant by his contract of employment assumes all the usual and ordinary hazards of the business, and especially those of which he is cognizant. *Renfro v. R. R.*, 86 Mo. 86; Wood on Master and Servant, sec. 382; *Schwartz v. Cornell*, 59 Hun, 623; *Sweet v. Coal Co.*, 78 Wis. 127; *Kolb v. Enterpise Co.*, 36 Ill. App. 419; *Sauer v. Oil Co.*, 43 La. 669. (4) It is error for the court to instruct the jury as to the negligence of defendant in having a trapdoor at a particular point, when there is no evidence that said trapdoor was negligently constructed, or in any way different from the kind ordinarily used in like buildings. *Burns v. R'y*, 129 Mo. 41 (51); *Evans v. Transit Co.*, 106 Mo. 594; *Dunham v. Joyce*, 129 Mo. 5; *Musick v. Railroad*, 57 Mo. 134. Nor is there any presumption of negligence of a corporation in favor of its own employees arising from mere proof of an accident. *Smith v. R'y*, 113 Mo. 70; *Ryan v. McCully*, 123 Mo. 636; *Hicks v. R'y*, 46 Mo. App. 304. (5) Where the preponderance of evidence against the verdict is so strong as to raise a presumption of prejudice, corruption, or gross ignorance, on the

part of the jury, the appellate court will reverse the cause. *Walton v. R'y*, 49 Mo. App. 620; *Spohn v. R'y*, 87 Mo. 74; *Friez v. Fallon*, 24 Mo. App. 439; *Lyonberger v. Pullman*, 16 Mo. App. 392; *Borgraft v. Knights of Honor*, 22 Mo. App. 148; *Perse v. Railroad*, 51 Mo. App. 171.

*Teasdale, Ingraham & Cowherd* for respondent.

(1) As has been said by this court in *Halliburton v. Railroad*, 58 Mo. App. 33, the repetition of the duty of the master to furnish to the servant a reasonably safe place to work has become tedious. A hatchway in a mercantile building, covered by a trapdoor, is negligence, *per se*, unless due diligence is used to keep the same closed. Laws 1891, page 160. The word "having," as used in instructions 2 and 3, reasonably construed, means the location and use. *Reichla v. Greusfelder*, 52 Mo. App. 43–59; *Musick v. Dold*, 58 Mo. App. 322; *Monahan v. Clay & Coal Co.*, 58 Mo. App. 68–74; *Halliburton v. R. R.*, *supra*. (2) Even if Freitag was negligent, and was a fellow servant, yet this negligence commingling with that of the master in the location of the door, permitting it to be used as it was, and in having it unlighted, makes the case one of joint negligence of the master and fellow servant, and the master is liable. *Young v. Shickle*, 103 Mo. 324; *Ellingson v. R'y*, 60 Mo. App. 679. (3) The rule in Missouri on this subject is, that where a servant, knowing of the existence of defects in the place in which he is working, nevertheless continues to work there, he is held to have waived or assumed the risk only in cases where the defect is so open and obvious, and of so threatening a nature that no man of ordinary prudence would continue to work about it. And this is a question for the jury, when reasonable

minds might arrive at different conclusions as to this. *Warner v. R'y*, 62 Mo. App. 190; *Williams v. R'y*, 109 Mo. *loc. cit.* 486, 487; *Monahan v. Clay & Coal Co.*, *supra; Halliburton v. R'y, supra.* This defense (assumption of risk) was not pleaded, and hence can not now be urged. *McMillen v. R'y*, 60 Mo. App. 231. (4) There being evidence tending to show that the light in the office was obstructed by objects between that and the trapdoor, the question of whether or not plaintiff, in going out of the door, and into the trap-door, was in the exercise of ordinary care, was a question for the jury, and was properly submitted. The most that could be said is, that on this point opinions might differ, and in such cases, the matter is always properly referred to the jury. *McNown v. R. R.*, 55 Mo. App. *loc. cit.* 591; *Kenney v. R. R.*, 105 Mo. 284. (5) The court manifestly pursued the proper course, by leaving to the jury the question of whether or not the having of the trapdoor at the particular place was an act of negligence. *Rouse v. Ledbetter*, 56 Kan. 348; *Walsh v. Transportation Co.*, 52 Mo. 434; *Harvesting Co. v. Buraudt*, 37 Ill. App. 165; *Middleton v. Roy-croft*, 33 Ill. App. 381.

SMITH, P. J.—This is an action by the plaintiff against the defendant to recover damages for personal injuries received by the former in consequence of the negligence of the latter. The specific acts of negligence alleged in the plaintiff's petition are the following, to wit: *First.* That defendant negligently and carelessly maintained a dangerous trap-door and cellarway immediately in front of its office where plaintiff was by his duties compelled to go, said trapdoor and cellarway forming a part of the floor over which he was compelled to pass, and said trapdoor and cellarway being so near the entrance to said

PLEADINGS.

office that a person coming out of the same would be likely to fall into said cellarway when said trapdoor was raised before he would have opportunity to see that the same was open. *Second.* That defendant negligently and carelessly raised said trapdoor, and negligently and carelessly left said cellarway opened and unguarded and unlighted. *Third.* That defendant carelessly and negligently failed to provide and keep lighted a light at or near said trapdoor and cellarway so that one passing over or near the same could see that it was open and dangerous.

The answer was a general denial accompanied with the plea of contributory negligence and that the plaintiff's injuries were occasioned by the negligence of a fellow servant.

There was a trial which resulted in judgment for plaintiff and from the latter defendant appealed. The appealing defendant assails the judgment mainly on the ground that the trial court erred in its action refusing the peremptory instruction asked by it.

There was evidence adduced at the trial which tended to establish substantially these facts.

That defendant for some months prior to the happening of the injury complained of, maintained a depot in Kansas City for the storing and delivery of beer in said city; that plaintiff was employed by it as the driver of one of its beer wagons; that its office was in the northwest corner of its depot building and the room of its drivers was in the southwest corner; that between the two was a wide entrance way through which its wagons were accustomed to drive into a large quadrangular room where they were loaded; that at the rear, or east end of this room, was the cooling rooms, in which the beer was stored. Running from the back door of the office along the north and east sides of this large room, was an elevated platform

FACTS.

about three and one half feet high, and about five feet wide, used as a loading platform, and also as a walk or passageway. There were steps leading up onto this platform, and the ordinary way of passage from the foreman's office to that of the superintendent was across the wagon room, up these steps, and along the platform to the back door of the office. There were four or five large posts situated at the edge of this platform, and supporting the upper story of the building, and on each of these posts was a gas jet. One of these posts set about two feet east of the back door of the office, to which the south office partition ran, forming a sort of vestibule for this entrance. In the center of the platform, or passageway, about four feet from the office door, and two feet from this vestibule, was a trapdoor opening on a stairway leading to the cellar. This door was two feet, eight inches wide, and six feet, six inches long. When raised, the door rested against the north wall of the room, so that it left open about half of the passageway. The cellar to which the trapdoor led had been arranged for bottling beer, but had not been used except for the storing of coal.

Plaintiff, on January 6, 1894, after making his last round of the customers, returned to the depot about half past 5 o'clock, but he first went to the foreman's office where he made up his accounts and checked them over with the foreman; then he went through the wagon room (the usual way) up the steps onto the platform and along the same to the office, where he made his report to the bookkeeper. He desired to see the superintendent (Mr. Meier) about a beer bung that one of the customers asked for, but as he was not in at that time, he returned to the foreman's office to wait until he should come in. About 6 o'clock, learning that Mr. Meier had come to the office, he again went there by the same route, and informed him of the customer's

request. Mr. Meier, after looking, told him he had none, whereupon plaintiff said there was one in the foreman's office that would do if repaired, and Meier told him to get it and bring it to him and he would have it repaired. Plaintiff returned to the foreman's office, got the beer bung, and came back the usual route. When he reached the back door of the superintendent's office Meier was at the telephone. Plaintiff waited to speak to Meier, and while waiting was standing on the trapdoor and another driver came up behind him and also waited to enter the office and make his report.

When Meier finished using the telephone he went back into the office, plaintiff and the other driver following him in. Plaintiff gave Meier the beer bung, and showed him what had to be fixed and, turning around, opened the door with one hand and the screen door with the other, closing the office door as he stepped out, and stepped right into the open stairway, and fell, breaking both bones of the left leg in the ankle joint.

He had been in the office but a minute or two, talking with Meier, and while he was there the stable man, Freitag, had gone into the cellar after coal and left the trapdoor open. In this large quadrangular room there was no gas jet lighted, although there were numerous gas jets there, and the only light in the room was such as came from the one jet in the office through the glass panel of the office door. This was a double-armed jet fixed in the south wall of the office, about ten feet from the door, and about five and one half feet above the office floor. When extended, it would stand out about fourteen or fifteen inches, and when pushed back would stand close to the wall. Whether it was extended on this night, or pushed back against the wall, the evidence does not

show.   The bookkeeper, a man about six feet tall, was writing at a standing desk in front of the jet, a safe about four feet high stood back of the door, and Meier was leaning up against the safe, and Wenthe, the other driver, was standing there near him, all three of them between the gas jet and the glass panel of the door.   Plaintiff testified that he could not see that the trapdoor was raised.   That the shadows of the wooden panel extended across the trapdoor, and on coming out of the lighted room one was not able to see whether the trapdoor was open or closed.

If the defendant was guilty of the negligence alleged against it, the plaintiff was entitled to go to the jury unless he disentitled himself thereto by his own contributory negligence.   The evidence discloses that the legal relation existing between plaintiff and defendant at the time of the former's injury was that of master and servant. The law enjoins upon the master the duty to furnish the servant a place where the work is to be carried on that is reasonably safe.   By reference to the adjudications cited by us in *Musick v. Dold*, 58 Mo. App. 323, it will be seen that this rule of the common law is very firmly imbedded in our jurisprudence. And it has been declared that the obligation which the general law imposes upon the owner of premises to guard persons lawfully there against pitfalls, may be applied between master and servant; and a failure to comply with this legal duty might, under the circumstances of a given case, authorize the legal inference of negligence on the part of the master.   *Dowling v. Allen*, 74 Mo. 13.

In an action of this kind it devolves upon the servant to prove that the master failed in some legal duty which he owed him.   It was the duty of the defendant to keep the platform over which the plaintiff was author-

ized to walk in going to and returning from the office of the superintendent in a reasonably safe condition. If there was a trapdoor therein it was the duty of the defendant to keep the same securely closed or else protect it by suitable guard rails (Session Acts, 1891, p. 189), and to provide sufficient light there to enable those of its servants who should have occasion to walk over the platform in the performance of the work assigned to them by the exercise of reasonable care to discover such hatchways when open, so that they might pass along with safety.

It appears that the plaintiff a few minutes before the happening of the injury to him while on his way to the office of the superintendent had passed along the platform and over the trapdoor, the latter being then securely closed. After visiting the superintendent's office the plaintiff opened the door leading out onto the platform. The only light that illuminated the way in front of him was that which was reflected through the glass of the upper panel of the office door, which shut behind him. Inside of the office door the superintendent and perhaps one or two others stood wholly or partly between the gas jet and the door in question, and thus obstructed the passage of the rays of light that otherwise would have been cast through the glass door. But this is not all, for when plaintiff passed through the door and while stepping forward in the direction of the trapdoor his opaque body, which must have been nearly or quite as wide as the glass part of the door, inevitably cut off the passage of the light from his front, and thereby darkened the passageway.

These undisputed physical facts, mute witnesses though they be, convey a clearer idea, a more trustworthy description of the conditions existing there at the time of the injury than is to be gleaned from the testimony of any living witness who testified in the

case. It can well be seen that when the plaintiff standing in the threshold of the office door with his face toward the trapdoor, had but a few faint rays of light by which to guide his footsteps. It is common experience that when one passes out of a well lighted room into one where darkness prevails that his power of discernment by the eye is not as great as after remaining for a while in the latter. From these facts the jury might very well have concluded that the plaintiff was unable by the exercise of ordinary care to have discovered the open condition of the trapdoor. It is no answer to this, that, as testified to by some of defendant's witnesses, when standing on the trapdoor they could, by the light which the gas jets in the office reflected through the glass door, read the print of a newspaper for the reason that the experiment was conducted by them without the presence of obstructions similar to those we have already mentioned. It may have been and no doubt was true that if the passage of the rays of light through the glass door were in no way obstructed, that a newspaper could be read by one standing on the trapdoor, but that does not, by any means, prove that this could be accomplished with the presence of the obstructions to the passage of the light that were there when the plaintiff was injured. So that it will not do to say that there was no evidence before the jury that the defendant failed to provide and keep a light at or near said cellarway, so that the defendant in passing over the platform could, by the exercise of reasonable care, see that it was open and dangerous.

If the plaintiff, at the time of his injury, knew that the trapdoor was open and that it was so dark that its ——: assumption location could not be discovered, and with of risk: obvious this knowledge he undertook to pass along danger: contributory negligence. the platform on his way from the superintendent's office to that of the foreman, he would be

held to have assumed the risk of the danger incident to such passage, because such risk was perfectly obvious to his senses. *Musick v. Dold, supra; Fugler v. Bothe*, 43 Mo. App. 44; *Kengan v. Kavanaugh*, 62 Mo. 230. But the plaintiff did not know the cellar door was open at the time he fell through it. He had a right to act on the assumption that the trapdoor was still closed, and, therefore, he can not be held to have assumed the risk of the danger incident to passing over the darkened platform. When the trapdoor was opened it was the duty of the defendant to have in some way given notice of that fact or to have provided a guard rail or a light so that its condition could have been brought to the attention of those having occasion to pass along the platform. It is quite clear that the evidence tends to establish a breach of the defendant's duty to plaintiff and that in consequence thereof the plaintiff was injured. The fact that the plaintiff, in leaving the superintendent's office to go to that of the foreman, passed through the glass door and thereby "stood in his own light" and contributed to the obstruction of the light on the platform does not help the defendant, since it was its fault that it was so. From the location of the gas jet this was unavoidable on part of the plaintiff. It was the duty of defendant to light the platform so that such of its servants as were compelled, while engaged in the performance of its work, could pass along there and see the condition of the trapdoor. If the gas jet inside did not afford sufficient light to protect the servants using the platform against the danger incident thereto when the trapdoor was open, it was the duty of the defendant to provide others that would. If the door was so narrow that the presence of the body of the servant before it obstructed the passage of the light so as to darken the platform to such an extent that one about to pass

upon the platform could not discover the open condition of the trapdoor, then it was the duty of the defendant to provide additional means of lighting the platform, otherwise it would be guilty of negligence. This very fact of itself is persuasive evidence of the negligence of the defendant in providing a safe place for its servants to perform the work required of them.

The defendant further insists that if the cellarway was left open it was through the negligence of Freitag, a fellow servant, and, therefore, it is not liable for plaintiff's injuries. The rule is well settled that the master is not responsible to those engaged in his employment for injuries suffered by them as the result of the negligence of the other servants in his employ, engaged in the same common service, unless the master himself has been in fault. *Warmington v. R. R.*, 46 Mo. App. 159; *Dixon v. R. R.*, 109 Mo. 413; *Higgins v. R. R.*, 104 Mo. 413. It is only where the negligence of a fellow servant is the whole cause of the injuries that it will avail the master as a defense. *Delveese v. M. I. M. Co.*, 54 Mo. App. 476.

——: negligence: fellow servant: defense.

Even though Freitag was negligent in leaving the trapdoor open without giving any warning thereof, the defendant himself was likewise guilty of negligence in failing to provide sufficient light near the cellarway so as to enable its servants having occasion to pass along the platform while engaged in the defendant's work, to discover, by the exercise of reasonable care, the open condition of the trapdoor. It was made one of the duties of Freitag to bring up from the cellar coal for the use of the stoves employed to heat the building, and in doing so he was compelled to open the trapdoor, which was located in the much used passageway, where there was no sufficient light to enable those of its servants who, after night, should have occasion to pass

over the same to see whether such trapdoor was open or closed. The injury of the plaintiff resulted from the combined negligence of defendant and its servant, Freitag, so that the alleged negligence of the plaintiff's fellow servant, Freitag, is no defense to the plaintiff's action.

It follows from the foregoing considerations that the action of the circuit court in refusing the defendant's peremptory instruction must be upheld.

It is the defendant's further contention that the court erred in giving the plaintiff's second and third instructions, which told the jury in substance that, although they believed from the evidence that the fellow servant of the plaintiff was negligent in leaving the cellar door open, yet if they further believed that the defendant was negligent in having the door at that point, or was negligent in not having the place reasonably lighted, and that both the negligence of the fellow servant and that of the defendant were the producing causes of the injury, to find for the plaintiff. It is conceded that the petition alleges that the defendant was negligent in maintaining a trapdoor in the passway; but it is objected that there is no evidence tending to sustain the allegations.

The evidence tended to show that the trapdoor was located in the narrow passageway leading from the quadrangular room into the back door of the superintendent's office, and over which defendant's numerous servants were obliged to daily pass. It tended to further show that the trapdoor was located in such close proximity to the back door of the superintendent's office that one passing out of it was afforded no reasonable opportunity to observe whether the trapdoor was opened or closed. Besides this, it was shown to be located at a point in the passageway where one,

after nightfall, passing out of the office door, could not, owing to the location of the gas get, by which the passageway was lighted, discern, by the exercise of reasonable care, in what condition it was. It seems to us that the location, surroundings, and construction of the trapdoor, and the manner and purpose for which it was used, were facts the evidence tended to prove, from which the jury were authorized to deduce the inference of negligent maintenance, if it was for the jury to determine from the evidence whether or not it was located in an unsafe and dangerous place. *Monahan v. Clay Co.*, 58 Mo. App. 74; *Eubank v. Edina*, 88 Mo. 655; *Gavish v. R. R.*, 49 Mo. 274. We do not think the plaintiff's said instructions are justly subject to the objection the defendant has lodged against them.

The defendant finally objects that the verdict is against the evidence, and so manifestly so as to raise a presumption of prejudice, corruption, or gross ignorance on the part of the jury. It is not our province to determine facts or review evidence, except in chancery cases. The practice here is that unless the verdict is the result of corruption, passion, or prejudice, or is brought about by some error or misdirection of the court, it will not be disturbed. The trial court ordinarily is the proper tribunal to correct an appearance of partiality, prejudice, or misconduct by the jury. We discover nothing in the record in the present case to justify any interference by us.

The judgment will be affirmed. All concur.